JOHN C. CRUDEN
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

JOHN S. MOST
Trial Attorney, Natural Resources Section
601 D Street, N.W., Washington, D.C. 20004
Voice: (202) 616-3353, Fax: (202) 305-0506
John.Most@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                     )
WESTERN ORGANIZATION OF RESOURCE    )
COUNCILS, FRIENDS OF THE EARTH         )
                                                     )
            Plaintiffs,            )
v.                                  )        Case Number: 1:14-cv-1993-RBW
                                                     )        Honorable R. B. Walton
JEWELL *et al.*,                    )
                                                     )
            Defendants,            )
_____)

**FEDERAL DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

MOTION TO DISMISS ....................................................................................................1

MEMORANDUM OF LAW ............................................................................................2

INTRODUCTION ............................................................................................................2

LEGAL BACKGROUND ................................................................................................3

A.      The Mineral Leasing Act of 1920, As Amended ................................................3

B.      The National Environmental Policy Act ...........................................................5

STANDARD OF REVIEW ..............................................................................................6

ARGUMENT ...................................................................................................................7

      I.       Insofar as Plaintiffs Purport to Assert a Claim Under 5 U.S.C. § 706(2), that
         Claim Must be Dismissed for Failure to Challenge Final Agency Action .............7

      II.      Insofar as Plaintiffs Purport to Assert a Claim Under 5 U.S.C. § 706(1), the
         Claim Must Be Dismissed For Failure to Identify any Mandatory Legal Duty ......9

CONCLUSION ...............................................................................................................12

**MOTION TO DISMISS**

The United States Department of the Interior ("Interior"), the Bureau of Land Management ("BLM"), an agency of Interior, and the individuals named in their official capacities as Defendants, hereby move for dismissal of the Complaint, Dkt. 1, in this action under the National Environmental Policy Act ("NEPA").  42 U.S.C. §§ 4321 *et seq*.  Defendants request entry of judgment in their favor on the two claims for relief asserted by Plaintiffs (captioned as a single claim).  *See* Compl. ¶¶ 187- 197.  The first claim asserts arbitrary conduct under section 706(2)(A) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), based on a supposed failure of Defendants to supplement its environmental analysis of a rule that has been in place for over 35 years and has not recently gone through any modifications.  The second claim asserts that a supplemental analysis in the form of an environmental impact statement ("EIS") has been "unlawfully withheld or unreasonably delayed," under APA section 706(1), 5 U.S.C. § 706(1).

Both claims should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).  Taking the allegations of fact as true, Plaintiffs fail to state a cognizable claim under APA section 706(2)(A) because the complaint fails to identify final agency action, as the APA requires.  Plaintiffs' claim under APA section 706(1) is also fundamentally flawed, because the Complaint fails to identify a mandatory duty to perform a discrete act.  *See Norton v. S. Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55, 64 (2004) (requiring an assertion that defendant "failed to take a discrete agency action that it is required to take").

For all of these reasons, Defendants respectfully ask the Court to dismiss the Complaint with prejudice and enter judgment in their favor.

1

## MEMORANDUM OF LAW

## INTRODUCTION

Based on an alleged violation of NEPA, Plaintiffs ask the Court to enjoin federal coal leasing nationwide, until Interior prepares a supplement to an EIS it prepared in 1979.  The EIS had served to ensure NEPA compliance for the 1979 promulgation of new regulations under the Mineral Leasing Act of 1920 ("MLA" or "the Act"), which established Interior's modern coal management program.  Plaintiffs claim a supplement is necessary to address new information and circumstances concerning the effects of the coal program on climate change.  Plaintiffs are incorrect, as they identify no legal duty to prepare a supplemental EIS.

The MLA authorizes leasing of federal coal deposits to American citizens, firms, and governmental entities, and grants the Secretary of the Interior broad authority to promulgate implementing regulations.  30 U.S.C. §§ 181, 189.  The 1979 regulations were intended to accommodate several new Congressional enactments, most importantly the Federal Coal Leasing Amendments Act of 1976, and the Federal Land Policy and Management Act of 1976.  *See Coal Management, Federally Owned Coal*, 44 Fed. Reg. 42534, 42616 (Jul. 19, 1979) (Final Rulemaking).  The 1979 regulations featured two non-emergency leasing mechanisms.  The first, "regional leasing," was agency-driven, rather than industry-driven.  *Id*.  The agency would make leasing decisions based on region-wide planning and environmental analysis, in broad geographic areas known as "coal production regions."  *Id*. at 42616 (Subpart 3420).  The second, "leasing on application," was industry-driven, like predecessor programs, and available *outside* of coal production regions. *Id*. 42625 (Subpart 3425).  To ensure NEPA compliance solely for the issuance of the 1979 regulations, but not for individual leasing decisions that are subject to separate NEPA

review (*see* 43 C.F.R. § 3425.3), Interior prepared a programmatic EIS. *See* Compl. ¶ 57 (discussing the 1979 EIS). This document lies at the heart of the present dispute.

The Complaint contends Interior must supplement the 1979 EIS, some thirty-five years later, to account for new information regarding climate change, on the theory that the 1979 EIS "continues to govern the federal coal management program." Compl. ¶ 190. It does not. As explained herein, Plaintiffs misapprehend the EIS's force and effect under the law. No changes to the 1979 coal management regulations have been proposed. Thus, no new agency action – a requirement for a 706(2) claim – has occurred. Moreover, every leasing decision Interior makes under the MLA is subject to individual NEPA analysis, as the 1979 regulations require to this very day. *See* 43 C.F.R. § 3425.3. Plaintiffs identify no event that triggers a legal duty to supplement the 1979 EIS prepared exclusively for the issuance of the 1979 rule. In such circumstances, Plaintiffs fail to state a cause of action under either section 706(1) or 706(2)(A), because no new agency action has occurred (other than action independently subject to NEPA) and because there exists no duty to supplement the long-ago completed 1979 rulemaking and EIS. The agency neither wrongly declined to prepare a supplement, nor breached a legal duty to do so.

For all these reasons, Defendants request that the Court dismiss the Complaint and enter judgment in their favor.

## LEGAL BACKGROUND

### A.  The Mineral Leasing Act of 1920, As Amended.

The MLA authorizes the Secretary to lease federal coal deposits to American citizens, firms, and governmental entities. 30 U.S.C. § 181. As this Court has explained, the Secretary's authority "implicate[s] a large number of overlapping statutory mandates," *Natural Res. Def. Council, Inc. v. Jamison* ("*Jamison*"), 815 F. Supp. 454, 456 (D.D.C. 1992), including the MLA, as amended by the

Federal Coal Leasing Amendments Act ("FLCAA"), Pub. L. No. 94-377, 90 Stat. 1085 (1976), the

Federal Land Policy and Management Act of 1976, 43 U.S.C. §§ 1701-1787 ("FLPMA"), the

Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201-1328, and an "Act to

further amend the Mineral Leasing Act of 1920," Pub. L. 95-554, 92 Stat. 2073-2075 (Oct. 30, 1978),

among other statutes.

In 1979, in an exercise of its "broad authority," *Jamison,* 815 F. Supp. at 456, Interior

promulgated new regulations significantly revising the coal management program.  *See* 43 C.F.R.

Subpart 3400; *Coal Management; Federally Owned Coal*, 44 Fed. Reg 42,584 (Jul. 19, 1979).  The

new regulations established two leasing mechanisms: (1) "regional leasing" in coal production

regions, which was agency-driven, 43 C.F.R. Subpart 3420; and (2) "lease by application" in areas

outside of coal production regions, which was industry-driven, 43 C.F.R. Subpart 3425.  In a separate

action, BLM identified eight coal production regions.  *See Identification of Coal Production Regions*

*Having Major Federal Coal Interests*, 44 Fed. Reg., 65,196 (Nov. 9, 1979).  In 1986, BLM further

revised the 1979 program, due in part to changes in the energy market.  *See WildEarth Guardians v.*

*Salazar*, 859 F.Supp.2d 83, 88-89 (D.D.C. 2012) (noting "soft market considerations" and "limited

leasing interest" in the Powder River Coal Production Region).  To comply with NEPA for the

rulemaking, BLM relied on a 1985 supplement to the 1979 EIS.  Compl. ¶ 73.

A key focus area of the 1979 regulations was the advent of regional leasing, which was

intended to make government planning the primary factor in leasing decisions within defined coal

production regions, instead of the industry-driven scheme previously in place. *See e.g.,* 44 Fed. Reg.

42584, 42590 (discussing adoption of regional production goals and establishment of regional

leasing targets in coal production regions).  However, interest in regional leasing was minimal, and

by 1990, BLM had decertified the nation's eight coal production regions and abandoned regional

leasing in favor of lease-by-application. *Id.* at 89; Compl. ¶¶ 48, 78; *see e.g.*, *Decertification of the Powder River Coal Production Region*, 55 Fed. Reg. 784 (Jan. 9, 1990). Lease-by-application continues today as BLM's exclusive non-emergency leasing mechanism. *WildEarth Guardians,* 859 F.Supp.2d at 89; Compl. ¶ 48.

### B.      The National Environmental Policy Act.

NEPA serves the dual purpose of informing agency decision makers of the environmental effects of proposed federal actions and insuring that relevant information is made available to the public so that they "may also play a role in both the decisionmaking process and the implementation of that decision." *Robertson v. Methow Valley Citizens Council,* 490 U.S.332, 349 (1989). NEPA's intent is to focus the attention of federal agencies and the public on a proposed action, so its consequences may be studied before the action is implemented. 42 U.S.C. § 4321; 40 C.F.R. § 1501.1(c); *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 371 (1989). To assist in meeting these goals, NEPA requires preparation of an EIS for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1502.3. The EIS must examine, among other things, alternatives to the proposed action, and the project's direct, indirect and cumulative impacts. 42 U.S.C. § 4332(2)(C); 40 C.F.R. §§ 1502.16, 1508.7.

When an agency makes "substantial changes in [a] proposed action that are relevant to environmental concerns," or when "[t]here are significant new circumstances or information relevant to environmental concerns," an agency must prepare a supplemental EIS. 40 C.F.R. § 1502.9(c)(1). Such a supplement, however, is only required when there is major federal action left to occur. *SUWA*, 542 U.S. at 73 (2004). It does not apply to completed actions, such as the 1979 rulemaking. *Id.* (declining to require supplementation because approval of FLPMA land use plan completed the proposed action).

## STANDARD OF REVIEW

Plaintiffs' claims are subject to dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), as Article III standing has not been adequately alleged, and for failure to state a claim upon which relief can be granted, under Fed. R. Civ. P. 12(b)(6), as no legal duty to supplement the 1979 EIS has been alleged.[1]   In evaluating a motion to dismiss under either rule, the Court must "treat the complaint's factual allegations as true." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C.Cir.2000) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C.Cir.1979)) (internal citation omitted); *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1250 (D.C. Cir. 2005) (same); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (on a motion to dismiss under either rule, "the allegations of the complaint should be construed favorably to the pleader."); *Walker v. Jones*, 733 F.2d 923, 925–26 (D.C. Cir. 1984) (same).   However, the Court "need not accept [plaintiff's] inferences" if they are "unsupported by the facts set out in the complaint." *Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (citations omitted).

To avoid dismissal, a plaintiff must aver "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Iqbal* explained that the pleading requirement of Fed. R. Civ. P. 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).   Thus, a pleading that offers "'labels and

---

[1] Rule 12(b)(6) is the appropriate vehicle for dismissal when a complaint fails to state a cause of action. *See Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (where APA cause of action is lacking, dismissal is properly invoked under Rule 12(b)(6), not under Rule 12(b)(1)); *John Doe v. Metro. Police Dep't of D.C.*, 445 F.3d 460, 466 (D.C. Cir. 2006) (whether there is a cause of action is not a jurisdictional question; rather, "the court must assume jurisdiction before deciding whether a cause of action exists"); *Natural Resources Defense Council, Inc. v. U.S. Dept. of State*, 658 F. Supp. 2d 105, 108 (D.D.C. 2009) (same).

conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient to state a claim under Rule 8. *Id*., quoting *Twombly*, 550 U.S. at 555. The Court may "consider only the facts alleged in the complaint, any documents either attached to or incorporated [by reference] in the complaint and matters of which [the court] may take judicial notice." *Trudeau*, 456 F.3d at 183, quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## ARGUMENT

Plaintiffs fail to plead a cognizable claim for relief, rendering the Complaint subject to dismissal *with prejudice* under Fed. R. Civ. P. 12(b)(6). They contend, in a single count, that the NEPA regulation requiring supplementation, 40 C.F.R. § 1502.9(c)(1), creates a "mandatory, non-discretionary duty" to supplement the 1979 EIS. Compl. ¶ 188. They argue that BLM breached this duty "contrary to the standards of the APA," citing, but not distinguishing between, sections 706(1) and 706(2)(A). *Id*. at ¶¶ 192, 195-96. Because these sections impose different standards of review, and different restrictions on the scope of judicial review, they are addressed separately below.

**I.     Insofar as Plaintiffs Purport to Assert a Claim Under 5 U.S.C. § 706(2), that Claim Must Be Dismissed For Failure to Challenge Final Agency Action.**

Section 702 of the APA provides a private right of action for persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Thus, under the APA, "the person claiming a right to sue must identify some 'agency action' that affects him in a specified fashion." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 882 (1990). "It is judicial review 'thereof' to which he is entitled." *Id.* The "agency action," moreover, must also be "final" where, as here, "review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA . . . ." *Id.* A "final agency action is one that marks the consummation of the agency's decision-making process and that establishes rights and obligations or creates binding legal

consequences." *Nat'l Res. Def. Council v. EPA*, 559 F. 3d 561, 564 (D.C. Cir. 2009), citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

Apart from its discussion of unchallenged historical developments in BLM's regulation of coal resources, the Complaint fails to identify any "agency action" – much less a *final* agency action – that affects or aggrieves the plaintiffs within the meaning of 5 U.S.C. § 702. Although the Complaint contains several vague references to agency decision making, none states a legally adequate claim for relief. For example, in paragraph 22, Plaintiffs assert that venue is proper because a "substantial part of the events or omissions giving rise to the claims have occurred in this district due to *decisions* made by Defendants." Compl. ¶ 22 (emphasis added). But these decisions are not identified, much less challenged, in the Complaint. Similarly, in paragraph 28, Plaintiffs claim that their respective members' interests are harmed by Defendants' "decision" (oddly stated in the singular) to "issue new coal leases, modify existing leases, and take other actions under the federal coal management program." *Id*. ¶ 28. Again, these allegations are insufficient to allege a claim under 5 U.S.C. § 706(2) because they do not identify, let alone challenge, discrete and final agency action. Finally, in Paragraph 79, Plaintiffs refer to BLM's 1990 "decision" to decertify the Powder River Coal Production Region, but they do not challenge that decision, nor could they. The decertification decision was made more than twenty-four years ago. Any attempt to challenge it would be barred by the six-year statute of limitations. 28 U.S.C. § 2401(a); *WildEarth Guardians v. Salazar,* 783 F.Supp.2d 61, 67-68 (D.D.C. 2012) (rejecting analogous claim as an "untimely collateral attack" on BLM's 1990 decision to decertify the Powder River Coal Production Region).

These deficiencies in pleading are fatal to Plaintiffs' claims. In *National Wildlife Federation,* plaintiffs challenged the BLM's general ongoing practice of reclassifying some public lands that were previously "withdrawn" from mining activities. 497 U.S. at 879. Plaintiffs sought to use the

APA to compel BLM to prepare a programmatic EIS to study the environmental impacts of what plaintiffs dubbed the "land withdrawal review program." The Supreme Court rejected the challenge, explaining that a plaintiff "cannot seek wholesale improvement of [a] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." *Id.* at 891. Instead, a plaintiff invoking the private right of action in APA section 702 "must direct its attack against some particular 'agency action' that causes it harm," *id.*, and this action must also be "final" within the meaning of APA section 704. *Bennett*, 520 U.S. at 177-78. Although this "case-by-case approach . . . is understandably frustrating," it is "the traditional, and remains the normal, mode of operation of the courts." *National Wildlife Federation*, 497 U.S. at 894.

Insofar as Plaintiffs purport to assert a claim under APA section 706(2), directed at the entire federal coal management program, and not at a specific agency action that causes harm, the Complaint must be dismissed. The Complaint's vague references to "decisions" do not properly challenge a final agency action that harms Plaintiffs' unnamed members, who allegedly work, reside, or recreate near unnamed mining cites.

## II.    Insofar as Plaintiffs Purport to Assert a Claim Under 5 U.S.C. § 706(1), the Claim Must Be Dismissed For Failure to Identify any Mandatory Legal Duty.

Plaintiffs also contend that Defendants breached a mandatory duty to prepare a supplement to the 1979 EIS. Compl. ¶ 196. They seek relief under APA section 706(1), which authorizes a court to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1). Importantly, a claim under section 706(1) may proceed "only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *SUWA*, 542 U.S. at 64. As the court explained, "[t]he limitation to *required* agency action rules out judicial direction of even

discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law)." *Id.* at 65.

The second claim for relief fails as a matter of law because the Complaint does not identify a "discrete agency action that [Interior] is required to take." *Id*. at 64.  The only source of a duty to supplement that Plaintiffs identify (*see* Compl. ¶ 188) is the NEPA regulation codified at 40 C.F.R. § 1502.9(c), which requires supplementation when there are "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." *See* 40 C.F.R. § 1502.9(c).  But that regulation is inapplicable to the 1979 EIS because section 1502.9(c), by its plain language, applies only to "proposed actions,"[2] and BLM has not proposed to take any new actions in reliance on the 1979 EIS.  The Supreme Court in *Marsh* construed Section 1502.9(c) to apply to *ongoing* federal projects where environmentally significant action remains. *Marsh,* 490 U.S. at 371.  Later, in *SUWA*, the Supreme Court confirmed that section 1502.9(c) has no application to completed actions.  *SUWA*, 542 U.S. at 73 (2004) (declining to require supplementation because approval of FLPMA land use plan completed the proposed action); *accord Wildearth Guardians,* 880 F.Supp.2d at 90 (approval of BLM's record of decision completed the proposed agency action, obviating any duty to supplement).  In 1979, BLM dutifully prepared a programmatic EIS to ensure NEPA compliance for development of its coal leasing regulations. When BLM formally promulgated the new regulations in July 1979, it completed the proposed action that was the subject of its NEPA analysis.  Consequently, the duty to supplement has no application here.  Plaintiffs' claim that BLM breached a mandatory, non-discretionary duty is unfounded as a matter of law.

---

[2] The regulation mirrors NEPA's EIS requirement, which itself applies only to "proposals for legislation and other major Federal action."  *See* 42 U.S.C. § 4332(2)(C).

Further, the principles of law which demand this result are not nullified, as Plaintiffs imply, by the agency's statement that the programmatic EIS would be "updated when necessary." *See* Compl. ¶ 60. Such a statement does not commit the agency to any course, and essentially states only that "if the law requires an update, the agency will prepare an update." *See, e.g., Alliance for Bio-Integrity v. Shalala*, 116 F.Supp.2d 166, 174 (D.D.C. 2000) (holding that an agency statement "[did] not bind its decisionmaking authority" where there had been no "irreversible and irretrievable commitment of resources to an action that will affect the environment") (internal quotations and citations omitted). Ultimately, the Complaint is deficient for purposes of Plaintiffs' section 706(1) claim because it identifies no circumstances requiring supplementation, and thus does not show that Defendants "failed to take a discrete agency action that [they are] required to take." *SUWA*, 542 U.S. at 64.

Finally, Plaintiffs' reliance on *Kleppe v. Sierra Club*, 427 U.S. 390 (1976), *see* Compl. ¶ 12, is misplaced. In *Kleppe*, plaintiffs had argued that Interior was required to prepare an EIS analyzing the region-wide impacts of coal operations in what BLM then called the Northern Great Plains region. The court rejected the claim, based on the "absence of a proposal for a regional plan of development." *Kleppe*. 427 U.S. at 401. Although the decision did not discuss supplementation or even the APA, its ultimate conclusion and factual similarities to this case (in particular, a demand for NEPA analysis of the impacts of multiple coal operations across a broad geographic area, and not of any specific mining project) counsel dismissal here. In the end, the *Kleppe* court reversed the judgment of the D.C. Circuit and reinstated the district court's order dismissing the case for failure to identify a proposed "major federal action" under NEPA. The Court should do the same here. In

the absence of a proposal to modify the regulations promulgated in 1979, Plaintiffs fail to state a cause of action. [3]

## CONCLUSION

For the foregoing reasons, Federal Defendant respectfully ask the Court to dismiss the Complaint for failure to state a claim upon which relief may be granted and to enter judgment for Defendants on both claims for relief.

Respectfully submitted this 30th day of January, 2015,

JOHN C. CRUDEN

Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

 /s/ John S. Most
JOHN S. MOST
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
P.O. Box 7611 Washington, D.C. 20044
202-616-3353 (voice), 202-305-0506 (fax)
john.most@usdoj.gov

*Counsel for Federal Defendants*

---

[3] Notably, Plaintiffs are not without recourse.  Other avenues for addressing their concerns are still available upon dismissal.  If Plaintiffs believe Interior is not meeting its responsibilities under NEPA to examine the impacts of federal coal leasing, then they may avail themselves of the APA's waiver of sovereign immunity in section 702 of the APA by challenging individual leasing decisions, rather than attempting to upend the entire coal management program.  *See National Wildlife Federation*, 497 U.S. at 894 ("The case-by-case approach that this requires is understandably frustrating . . . [b]ut this is the traditional, and remains the normal, mode of operation of the courts").  Several conservation groups have recently followed the case-by-case approach, and challenged specific leasing decisions.  *See e.g., WildEarth Guardians et al. v. Jewell* 738 F.3d 298 (D.C. Cir. 2013) (challenging BLM's West Antelope II leasing decision, concerning tracts in Wyoming's Powder River Basin); *WildEarth Guardians v. BLM*, 8 F. Supp. 3d 17, (D.D.C. 2014) (challenging the Belle Ayr/Caballo leasing decision, also in the Powder River Basin).

Of Counsel

Philip C. Lowe
Office of the Regional Solicitor
Rocky Mountain Region
Department of the Interior
755 Parfet Street, Suite 151
Lakewood, CO 80215
Tel: (303) 231-5353 ext. 274
Fax: (303) 231-5356
E-mail: philip.lowe@sol.doi.gov

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing is being filed with the Clerk of the Court using the CM/ECF system, thereby serving it on all parties of record, this 15th day of January, 2015.

/s/ *John S. Most*
JOHN S. MOST
*Counsel for Federal Defendants*