Michael J. McGrady (Wyo. State Bar No. 6-4099)
Jeremiah I. Williamson (Wyo. State Bar No. 7-4748)
Wyoming Attorney General's Office
123 State Capitol
Cheyenne, Wyoming 82002
(307) 777-6946
(307) 777-3542 *facsimile*
mike.mcgrady@wyo.gov
jeremiah.williamson@wyo.gov
*Attorneys for Proposed Intervenor- Defendant State of Wyoming*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS and FRIENDS OF THE EARTH, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 1:14-cv-01993-RBW |
| v. | ) ) | |
| SALLY JEWELL, in her capacity as Secretary of the Interior, DEPARTMENT OF THE INTERIOR, NEIL KORNZE, in his capacity as Director, Bureau of Land Management, BUREAU OF LAND MANAGEMENT, | ) ) ) ) ) ) ) | |
| *Defendants.* | ) | |

## STATE OF WYOMING'S UNOPPOSED MOTION TO INTERVENE

The State of Wyoming moves the Court for leave to intervene in this matter

as a party-defendant as of right or, in the alternative, permissively, under Federal

Rule of Civil Procedure 24. Wyoming intends to defend against all of the claims

asserted and relief requested in the Plaintiffs' complaint. In support of this motion, Wyoming has filed a memorandum of law and a proposed responsive pleading pursuant to Rule 24(c).

Undersigned counsel for Wyoming conferred with counsel for all parties prior to filing this motion. Counsel for the Plaintiffs indicated that Plaintiffs take no position on the relief requested in Wyoming's motion. Counsel for the Defendants stated that Defendants take no position on Wyoming's motion.

In light of the significant interests Wyoming has at stake in this litigation, Wyoming urges the Court to grant its motion to intervene as a party-defendant.

Submitted this 30th day of January 2015.

/s/ Jeremiah I. Williamson
Michael J. McGrady (Wyo. State Bar No. 6-4099)
Jeremiah I. Williamson (Wyo. State Bar No. 7-4748)
Wyoming Attorney General's Office
123 State Capitol
Cheyenne, Wyoming 82002
(307) 777-6946
(307) 777-3542 *facsimile*
mike.mcgrady@wyo.gov
jeremiah.williamson@wyo.gov
*Attorneys for Proposed Intervenor-Defendant*
*State of Wyoming*

Michael J. McGrady (Wyo. State Bar No. 6-4099)
Jeremiah I. Williamson (Wyo. State Bar No. 7-4748)
Wyoming Attorney General's Office
123 State Capitol
Cheyenne, Wyoming 82002
(307) 777-6946
(307) 777-3542 *facsimile*
mike.mcgrady@wyo.gov
jeremiah.williamson@wyo.gov
*Attorneys for Proposed Intervenor- Defendant State of Wyoming*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS and FRIENDS OF THE EARTH, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 1:14-cv-01993-RBW |
| v. | ) ) | |
| SALLY JEWELL and NEIL KORNZE, | ) ) ) ) | |
| *Defendants.* | ) | |

## STATE OF WYOMING'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE

The Western Organization of Resource Councils and Friends of the Earth (conservation organizations) ask this Court to halt federal coal leasing. Doc. 1 at 66. They argue that all coal leasing activities must cease until the federal defendants supplement a 1979 programmatic evaluation of federal coal management with an analysis of climate change impacts related to coal leasing. *Id*.

Wyoming is the largest producer of coal in the United States.[1] Most of the coal produced in Wyoming is mined from federal lands.[2] As a result, the federal coal leasing the conservation organizations seek to suspend generates hundreds of millions of dollars in annual revenues for the State of Wyoming. To protect Wyoming's interests in those revenues, and the coal leasing regulatory system into which it has invested its resources, Wyoming has moved the Court for leave to intervene as a party-defendant as of right, or, in the alternative permissively, under Federal Rule of Civil Procedure 24. This memorandum supports that motion.

## ARGUMENT

### I.    Wyoming is entitled to intervene as of right.

An applicant for intervention as of right must show: (1) the timeliness of the motion; (2) "an interest relating to the property or transaction which is the subject of the action"; (3) that "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (4) that "the applicant's interest is [not] adequately represented by

---

[1] *See* U.S. Energy Info. Admin., Wyoming State Profile and Energy Estimates, http://www.eia.gov/state/?sid=WY (last visited Jan. 12, 2015). This Court may "take[] judicial notice of information posted on official public websites of government agencies." *Pharm. Research & Mfr. of Am. v. U.S. Dep't of Health & Human Servs.*, --- F. Supp. 2d ----, No. 13-1501, 2014 WL 2171089 at *3 (D.C. Cir. May 23, 2014) (citations omitted).

[2] *See* U.S. Energy Info. Admin., Wyoming Dominates Sales of Coal Produced from Federal and Indian Lands (Aug. 7, 2013), http://www.eia.gov/todayinenergy/detail.cfm?id=12431.

existing parties." *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998) (quoting Fed. R. Civ. P. 24(a)). The applicant also must demonstrate standing "because a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit[.]" *City of Cleveland v. NRC*, 17 F.3d 1515, 1517 (D.C. Cir. 1994). A "district court must grant a motion to intervene" if the prospective intervenor meets these requirements. *Amador Cnty., Cal. v. U.S. Dep't of the Interior*, 772 F.3d 901, 903 (D.C. Cir. 2014) (citation omitted).

Wyoming meets these requirements. Wyoming has timely sought to participate in this litigation at the outset. Wyoming is entitled to intervene as of right because the relief the conservation organizations seek will harm Wyoming's multiple regulatory and revenue interests in federal coal leasing, and the federal defendants cannot adequately represent the State of Wyoming's interests in this matter. Accordingly, the Court should grant Wyoming's motion for leave to intervene as of right. *See WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 18-20 (D.D.C. 2010) (permitting Wyoming to intervene to defend federal coal leasing); *see also* Order Granting Mot. to Intervene, *WildEarth Guardians v. Salazar*, No. 1:10-cv-01133, ECF Doc. 22 (D.D.C. Sept. 20, 2010).

## A.   Wyoming's motion is timely.

A motion to intervene must be timely filed. Fed. R. Civ. P. 24(a). Courts judge timeliness of a motion to intervene "in light of all of the circumstances."

*United States v. British Am. Tobacco Austl. Svcs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006) (citation and quotation omitted). Accordingly, courts consider, among other things, the "time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Id.* Courts measure timeliness "from when the prospective intervenor 'knew or should have known that any of its rights would be directly affected by the litigation.'" *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (quotation omitted).

Wyoming has sought to participate from the outset of this litigation, before the Defendants have answered the suit or filed the administrative record. Wyoming's intervention at this early stage, less than two months after the conservation organizations filed their complaint, will not prejudice any of the parties. For these reasons, Wyoming's motion to intervene is timely. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (motion within two months of complaint filing is timely).

**B.      Wyoming has protectable interests in coal leasing.**

To satisfy the protectable interest requirement of Rule 24, a prospective intervenor must show "an interest relating to the property or transaction that is the subject of the action[.]" Fed. R. Civ. P. 24(a)(2). The D.C. Circuit treats the

4

interest requirement under Rule 24(a)(2) as equivalent to standing. *Jones v. Prince George's Cnty., Md.*, 348 F.3d 1014, 1018 (D.C. Cir. 2003). Thus, a party seeking to intervene to defend government action must "establish that it will be injured in fact by the setting aside of the government's action it seeks to defend, that this injury will have been caused by the invalidation, and the injury would be prevented if the government action is upheld." *Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001); *see also Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (finding defendant intervenor must show that it "would suffer concrete injury if the court grants the relief the [plaintiffs] seek"); *Cnty. of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 44 (D.D.C. 2007) (stating defendant intervenors must show "a real likelihood they will sustain a direct injury if the plaintiffs prevail in obtaining any of the relief they are requesting").

Federal coal leasing generates hundreds of millions of dollars in annual revenues for Wyoming. Grenvik Aff. 3, ¶ 7. During just fiscal year 2013, federal coal leasing yielded almost $1 billion in Wyoming revenues from severance and ad valorem taxes, lease bonus payments, and mineral royalties. *See id.*; Garland Aff. 2, ¶ 5.[3] Severance and ad valorem taxes on coal production provided Wyoming with $507,348,457 in revenue during fiscal year 2013. Grenvik Aff. ¶ 3, ¶ 7; *see also* Wyo. Stat. Ann. §§ 39-14-102(m), -103(a), -104(a) (imposing state taxes on

---

[3] *See also* Wyo. Dep't Revenue, Wyoming State Government Revenue Forecast, Table 6 (Oct. 2014), http://eadiv.state.wy.us/creg/GreenCREG_Oct14.pdf.

coal production). During the same period, federal coal leasing provided Wyoming with $238,725,045 in coal lease bonus payments. Garland Aff. 2, ¶ 5; *see also* 30 U.S.C. § 191(a) (allocating royalty and bonus shares to states). Wyoming uses these revenues to fund state programs, cities, counties, public schools and colleges, and water and highway infrastructure projects. Wyo. Stat. Ann. §§ 39-13-111, 39-14-801; *see also* Grenvik Aff. 4, ¶ 6; Garland Aff. 3, ¶ 6.

Given the fiscal importance of coal leasing, Wyoming has invested substantial resources into its role as a regulatory partner in the federal coal leasing regime. Wyoming participates in the review of every application to lease federal coal reserves within the State as a member of the Powder River Regional Coal Team. *See, e.g.*, Notice of Public Meeting of Powder River Regional Coal Team, 78 Fed. Reg. 23,951 (April 23, 2013) (noticing meeting to discuss coal leasing applications). Wyoming also acts as a cooperating agency in the evaluation of the environmental impacts of every federal coal lease in Wyoming, through the Wyoming Department of Environmental Quality.[4] The Wyoming Department of Environmental Quality has created comprehensive programs to regulate the land, water, and air quality impacts of coal mining, including a federally approved state program under the Surface Mining Control and Reclamation Act. *See* Wyo. Stat.

---

[4] *See, e.g.*, U.S. Bureau of Land Mgmt., Record of Decision: Environmental Impact Statement for the North Porcupine Coal Lease Application 3 (Oct. 2011), *available at* http://www.blm.gov/style/medialib/blm/wy/information/NEPA/hpdo/Wright-Coal/n-porcupine.Par.91450.File.dat/ROD.pdf.

Ann. § 35-11-401 through -437 (establishing land quality regulatory program); 30 C.F.R. § 950.10 (federal approval of Wyoming program).

If this Court grants the conservation organizations the relief they seek, federal coal leasing will grind to a halt. During that moratorium, none of the additional recoverable coal reserves in Wyoming will be available for leasing and mining. As a result, Wyoming will be deprived of the anticipated revenues on which its programs rely until the federal government completes the lengthy NEPA process the conservation organizations desire. In turn, Wyoming programs dependent on coal leasing revenues will suffer from the loss of funds. The loss of those governmental revenues "constitutes a concrete and imminent injury" that would be "fairly traceable" to the conservation organizations' success in this litigation. *Fund for Animals*, 322 F.3d at 733; *see also Akiachak Native Cmty. v. Dep't of the Interior*, 584 F. Supp. 2d 1, 6 (D.D.C. 2008); *Cnty. of San Miguel*, 244 F.R.D. at 47. At the same time that Wyoming would suffer from the loss of coal leasing revenues, Wyoming's investments in the existing federal coal leasing infrastructure would be stranded until leasing resumed. *Cf. Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) ("A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported.") (citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d

525, 527 (9th Cir. 1983)); *see also S.D. Farm Bureau, Inc. v. South Dakota*, 189 F.R.D. 560, 564-65 (D.S.D. 1999).

If, on the other hand, this Court upholds the federal government's coal leasing actions, Wyoming will not be exposed to these risks of injury. Proven reserves of coal will remain available for leasing, as they have been for years, and leasing of those reserves will continue to generate revenues on which Wyoming relies to provide public services. In turn, Wyoming's investments in the coal mining regulatory regime will retain their value. Because the conservation organizations' success in this action will concretely harm the State of Wyoming and that harm will be avoided if the federal action is upheld, Wyoming has protectable interests in this action and standing to intervene as a defendant.

**C.    The conservation organizations' claims threaten to impair Wyoming's interests in coal leasing.**

To satisfy the impairment requirement, an intervenor must also show that "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest[.]" Fed. R. Civ. P. 24(a)(2). This Court considers the "practical consequences" the action could have on the intervenor's interests. *Am. Horse Protection Ass'n*, 200 F.R.D. at 158 (citations omitted). Accordingly, impairment can be shown in many ways. For example, a prospective intervenor's interest "may be impaired where a decision in the plaintiff's favor would return the issue to the administrative decision-making process, notwithstanding the

prospective intervenor's ability to participate in formulating any revised rule or plan." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010) (citation omitted); *see also Fund for Animals*, 322 F.3d at 735. Similarly, impairment of interests will be found "when the disposition of the action would result in a substantial change in the status quo with respect to those interests." *District of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 234 (D.D.C. 2011); *see also Fund for Animals*, 322 F.3d at 735. And, of course, the loss of revenues constitutes impairment for purposes of intervention. *Fund for Animals*, 322 F.3d at 735 (citing *Mova Pharm.*, 140 F.3d at 1076).

The conservation organizations' claims threaten to impair Wyoming's financial and regulatory interests in federal coal leasing. If the conservation organizations prevail, Wyoming will suffer a loss of revenues that would otherwise continue to accrue from coal production. Wyoming's interests in the coal mining regulatory system also would be impaired if the conservation organizations succeed because that success "would return the issue to the administrative decision-making process" and "result in a substantial change in the status quo" of federal coal leasing. *WildEarth Guardians*, 604 F.3d at 1199; *District of Columbia*, 826 F. Supp. at 234. Wyoming's "loss of revenues during any interim period would be substantial and likely irreparable," and "there is no question that the task of reestablishing the status quo if the [conservation organizations] succeed[] in this

9

case will be difficult and burdensome." *Fund for Animals*, 322 F.3d at 735 (citation omitted). Therefore, this action places Wyoming's protectable interests at risk of impairment.

### D. The United States does not adequately represent Wyoming's interests in coal leasing.

To intervene as of right, an intervenor must also show that the existing parties do not adequately represent its interests. Fed. R. Civ. P. 24(a)(2). The burden on an applicant to show that existing parties do not adequately represent its interests is not onerous. *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (citations omitted). The applicant must show only that the representation may be inadequate. *Id*. A government party will not be presumed to represent adequately a proposed intervenor with "a more narrow and 'parochial' interest not shared by the [government]," because the government "would be shirking its duty were it to advance this narrow interest at the expense of its representation of the general public interest." *Id.* at 193 (citation omitted); *see also Fund for Animals*, 322 F.3d at 735-36 (holding that even where the interests of a federal agency and another governmental entity overlap and the federal agency takes the other government's interests into account, the federal agency does not adequately represent the other government's interests).

In this matter, the federal defendants do not adequately represent Wyoming's interests in federal coal leasing. The federal defendants principal

interests are broadly representing the public and fulfilling their obligations under federal law. Wyoming, by contrast, is interested in the revenues federal coal leasing generates for Wyoming and the investments Wyoming has made in coal mining regulation. Though Wyoming and the federal defendants are both generally interested in seeing the conservation organizations' claims fail, the federal government's broad interests preclude it from adequately representing the more narrow interests, such as state severance tax revenues, that it does not share with Wyoming. Accordingly, the existing parties do not adequately represent Wyoming's interests in this litigation.

## II.    Alternatively, Wyoming should be allowed to intervene permissively.

Federal Rule of Civil Procedure 24(b)(1)(B) provides that "[o]n timely motion, the court may permit to intervene anyone who … has a claim or defense that shares with the main action a common question of law or fact." The decision whether to allow permissive intervention "is an inherently discretionary enterprise." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (citation omitted).

If allowed to intervene permissively, Wyoming will respond squarely to the conservation organizations' claims that federal coal leasing is unlawful absent another programmatic environmental impact analysis. In defense of federal coal leasing, Wyoming will present factual and legal arguments that show the

conservation organizations' are not entitled to the relief they request. And, because Wyoming has timely moved to intervene in this matter, the existing parties will not be prejudiced by Wyoming's participation. Accordingly, if the Court does not allow Wyoming to intervene as a party-defendant as of right, it should grant Wyoming permissive intervention under Rule 24(b).

## CONCLUSION

For the forgoing reasons, the State of Wyoming requests leave to intervene in this matter as of right pursuant to Rule 24(a), or alternatively, permissively pursuant to Rule 24(b).

Submitted this 30th day of January 2015.

/s/ Jeremiah I. Williamson
Michael J. McGrady (Wyo. State Bar No. 6-4099)
Jeremiah I. Williamson (Wyo. State Bar No. 7-4748)
Wyoming Attorney General's Office
123 State Capitol
Cheyenne, Wyoming 82002
(307) 777-6946
(307) 777-3542 *facsimile*
mike.mcgrady@wyo.gov
jeremiah.williamson@wyo.gov
*Attorneys for Proposed Intervenor-Defendant*
*State of Wyoming*