Paul M. Seby
Special Assistant Attorney General
Holland & Hart, LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202-3979
Phone:  (303) 295-8430
Fax:  (303) 291-9177
pmseby@hollandhart.com
*Attorney for Proposed Intervenor – Defendant*
*State of North Dakota*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS and FRIENDS OF THE EARTH, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 1:14-cv-01993-RBW |
| v. | ) ) | |
| SALLY JEWELL, in her capacity as Secretary of the Interior, DEPARTMENT OF THE INTERIOR, NEIL KORNZE, in his capacity as Director, Bureau of Land Management, BUREAU OF LAND MANAGEMENT, | ) ) ) ) ) ) | |
| *Defendants*. | ) ) ) | |

## STATE OF NORTH DAKOTA'S UNOPPOSED
## MOTION TO INTERVENE AS A DEFENDANT

Pursuant to Federal Rule of Civil Procedure 24(a)(2) and Local Rule 7(j) of

this Court, the State of North Dakota ("North Dakota")  moves the Court for leave

to intervene in this matter as a party-defendant as of right or, in the alternative,

permissively.  North Dakota intends to defend against all of the claims asserted and relief requested in the Plaintiffs' Complaint.  In support of this motion, North Dakota has filed a memorandum of law and a proposed responsive pleading pursuant to Rule 24(c).

Pursuant to Local Rule 7(m), undersigned counsel for North Dakota conferred with counsel for Plaintiffs, Federal Defendants, and intervenor-applicant State of Wyoming.  Counsel for the Federal Defendants takes no position on North Dakota's intervention motion.  Counsel for the State of Wyoming takes no position on North Dakota's  intervention motion.  Counsel for the Plaintiffs indicates that Plaintiffs take no position on North Dakota's  intervention motion, but reserve the right to respond to the motion.

In light of the significant interests North Dakota has at stake in this litigation, North Dakota urges the Court to grant its motion to intervene as a party-defendant.

Respectfully submitted this 19th day of February, 2015.

/s/ *Paul M. Seby*
Paul M. Seby (Colo. State Bar No. 27487)
Special Assistant Attorney General
Holland & Hart, LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202-3979
Phone:  (303) 295-8430

Fax:  (303) 291-9177
pmseby@hollandhart.com

Lauren R. Caplan (D.C. Bar No. 1009499)
Special Assistant Attorney General
Holland & Hart, LLP
975 F Street NW, Suite 900
Washington, D.C. 20004
Phone:  (202) 654-6919
Fax:  (202) 747-6520
lrcaplan@hollandhart.com

**ATTORNEYS FOR PROPOSED
DEFENDANT-INTERVENOR
STATE OF NORTH DAKOTA**

Paul M. Seby
Special Assistant Attorney General
Holland & Hart, LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202-3979
Phone:  (303) 295-8430
Fax:  (303) 291-9177
pmseby@hollandhart.com
*Attorney for Proposed Intervenor – Defendant*
*State of North Dakota*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WESTERN ORGANIZATION OF<br>RESOURCE COUNCILS and<br>FRIENDS OF THE EARTH,<br><br>    *Plaintiffs*,<br><br>v.<br><br>SALLY JEWELL, in her capacity as<br>Secretary of the Interior,<br>DEPARTMENT OF THE INTERIOR,<br>NEIL KORNZE, in his capacity as<br>Director, Bureau of Land Management,<br>BUREAU OF LAND MANAGEMENT,<br><br>    *Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:14-cv-01993-RBW |

### MEMORANDUM IN SUPPORT OF STATE OF NORTH DAKOTA'S
### UNOPPOSED MOTION TO INTERVENE AS A DEFENDANT

On November 24, 2014, the Western Organization of Resource Councils and

Friends of the Earth (collectively, "Plaintiffs")  filed a complaint against the

Department of the Interior ("DOI") and the Bureau of Land Management ("BLM") (collectively, "Federal Defendants") challenging the agencies' management of the federal coal leasing program.  Plaintiffs allege that the BLM has failed to update its 1979 coal leasing programmatic environmental impact statement ("PEIS") to analyze the asserted effects of greenhouse gas emissions from the mining and combustion of coal extracted from federal lands.  ECF. Doc. 1, ¶ 19.  Plaintiffs claim that "the development of a significant body of scientific knowledge indicating that greenhouse gas emissions from mining and combustion of coal cause[ ]or exacerbate[] climate change" obligates the BLM to update its federal coal leasing PEIS.  ECF Doc. 1, ¶ 192.  Plaintiffs further claim that the lease-specific environmental analyses prepared by the BLM as part of its Lease by Application ("LBA") process have been insufficient to analyze the full impact of coal leasing on global climate change.  ECF Doc. 1, ¶ 87.  Plaintiffs request that this Court issue declaratory judgment that the BLM has violated the National Environmental Policy Act ("NEPA") by failing to prepare a supplemental PEIS to address the global climate change impacts of the federal coal leasing program, and also issue an injunction prohibiting Federal Defendants from accepting or approving any application for a new coal lease or modification to an existing lease unless and until it prepares a supplemental PEIS.  ECF Doc. 1, ¶ 19.

The State of North Dakota ("North Dakota" or the "State") submits this motion to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2) and Local Rule 7(j) of this Court in order to defend against Plaintiffs' claims.  It respectfully requests that the Court grant its motion for leave to intervene as a defendant-intervenor as of right pursuant to Fed. R. Civ. P. 24(a)(2), or alternatively for permissive intervention under Fed. R. Civ. P. 24(b)(1)(B).

## INTRODUCTION

North Dakota is the ninth largest coal producing state in the United States, and produces an annual average of 27.5 million tons of coal.  Decl. of Jim Deutsch 4, ¶ 6, attached as Appendix 1.  Approximately 4.1 million tons of this coal comes from federal coal reserves.  Decl. of Lynn Helms 4, ¶ 11, attached as Appendix 2. North Dakota has invested significant economic and administrative resources in implementing its role as a regulatory partner in the federal coal leasing program and relies on multiple state agencies—including the Public Service Commission, Office of State Auditor, Office of Tax Commissioner, Office of State Treasurer, and Department of Mineral Resources—to effectuate this program.

The North Dakota Public Service Commission ("NDPSC") administers the State's surface mining and coal reclamation program ("ND Program") through a partnership with the United States Office of Surface Mining Reclamation and Enforcement.  Deutsch Decl. 2, ¶¶ 3-4.  Mining companies submit applications for

surface mining permits, permit revisions, and permit renewals to the NDPSC. Deutsch Decl. 2, ¶ 4.  The NDPSC must account for a mining company's federal coal lease status before issuing a permit, revision, or renewal.  Deutsch Decl. 2, ¶¶ 10-12.  As a result, if a mining company does not obtain a federal coal lease in a timely manner, it must request a permit revision and the NDPSC must undergo a comprehensive public notice and approval process.  Deutsch Decl. 4, ¶ 11; 6, ¶ 16.

The State also has significant financial interests in the revenue generated from the federal coal leasing program through federal mineral royalty payments and state severance and conversion taxes.  Pursuant to the Mineral Leasing Act of 1920, 30 U.S.C. §§ 181 et seq, the federal government disburses to the State fifty percent of royalties received from federal coal leases in North Dakota.  The State of North Dakota Office of the State Auditor certifies these royalty payments, along with federal coal lease bonus payments, and disburses them into accounts for State use.  Decl. of Dennis Roller 2, ¶¶ 4-5, attached as Appendix 3.  In fiscal year 2013, North Dakota received over $1 million in federal coal royalty disbursements and coal lease bonuses from the federal government.  Roller Decl. 5, ¶ 10; 6, ¶ 12.  In calendar year 2013, North Dakota distributed $1 million of coal-related revenue to its school districts and public facilities through its State General Fund and Federal Mineral Royalties Distribution Fund.  Roller Decl. 5, ¶ 13.  If mining companies

were unable to obtain leases for federal coal tracts in a timely manner, this revenue stream would dry up as coal leases expired.  Deutsch Decl. 4, ¶¶ 12-13; 6, ¶ 15.

North Dakota also receives revenue related to federal coal leases through a state severance tax and conversion tax.  The State imposes a severance tax on all coal severed for sale or industrial purposes, with limited exceptions.  Decl. of Linda Leadbetter 3, ¶ 8, attached as Appendix 4; N.D.C.C. Chapter 57-61.  This tax applies at a rate of 37.5 cents per ton of coal extracted.  *Id.*  In fiscal year 2014, the State collected approximately $1.54 million in severance taxes from federally-owned coal tracts.  Helms Decl. 4, ¶ 11.  Portions of these revenues were deposited into the State's Coal Development Trust Fund to use for loans to counties, cities, and school districts.  Decl. of Kelly Schmidt 3-4, ¶¶ 8-9, attached as Appendix 5; N.D.C.C. § 57-62-02.  Also in fiscal year 2013, the State collected approximately $25 million in coal conversion facilities privilege taxes related to federally-owned, state-owned, and privately-owned coal tracts.  Leadbetter Decl. 5, ¶ 14.  Portions of these annual collection figures for the conversion tax were generated from federal coal tracts.  Leadbetter Decl. 5, ¶ 14

Disposition of this litigation in Plaintiffs' favor would frustrate the State's interest in administering an efficient regulatory program for coal mining and reclamation, and its financial interest in revenues generated from federal mineral royalty payments and state taxes on federal coal.  Therefore, North Dakota

respectfully requests that the Court grant its motion for leave to intervene as a defendant-intervenor as of right pursuant to Fed. R. Civ. P. 24(a)(2), or alternatively for permissive intervention under Fed. R. Civ. P. 24(b)(1)(B).

## ARGUMENT

## I.     North Dakota Has Article III Standing To Participate In These Proceedings.

North Dakota has standing to participate in this action under Article III of the United States Constitution. *See Deutsche Bank National Trust Co. v. Federal Deposit Insurance Corp.*, 717 F.3d 189, 194 (D.C. Cir. 2013). Indeed, the State satisfies the constitutional standing requirements: (1) an injury-in-fact, "defined as harm that is concrete and actual or imminent, not conjectural or hypothetical;" (2) the injury is "fairly traceable to the governmental conduct alleged;" and (3) "it [is] likely that the requested relief will redress the alleged injury." *Friends of Animals v. Kempthorne*, 452 F.Supp.2d 64, 68 (D.D.C. 2006); *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228 (D.C. Cir. 1996). Furthermore, "when a party seeks to intervene as a defendant to uphold what the government has done, it [must] establish that it will be injured in fact by the setting aside of the government's action it seeks to defend, that this injury will have been caused by that invalidation, and the injury would be prevented if the government action is upheld." *Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001).

6

**A.     North Dakota Will Suffer Harm to a Legally-Protected Interest If Plaintiffs' Requested Relief Is Granted.**

North Dakota will suffer harm to its legally cognizable interests if the Court grants Plaintiffs' request for relief.  Should this court enjoin Federal Defendants from considering new or pending coal lease applications while undertaking supplemental NEPA analyses to consider the asserted effects of greenhouse gases, the BLM would not be able to approve any new or pending coal leases.  An injunction could also cause the BLM to suspend mining companies' existing coal leases and operations, and mine plans, and may cause the BLM to defer, or require modification of, federal coal lease applications.  As a result, North Dakota would suffer harm to its financial interest in revenues from federal mineral royalty payments and state taxes on federal coal, and also interest in administering a regulatory program for coal mining and reclamation.

**1.     Harm to North Dakota's Financial Interests.**

Federal coal leasing plays an important role in North Dakota's economy. The State receives over $2.5 million in annual revenue from the federal coal leasing program through three key sources:  federal mineral royalty payments from coal leases, federal coal lease bonus and rental payments, and severance and conversion taxes.  In fiscal year 2013, North Dakota received over $1 million in coal-related revenue from federal mineral royalty disbursements and federal coal lease bonus and rental payments.  Roller Decl. 5 ¶ 10; 6 ¶ 12.  The State then

7

distributed $1 million to counties and school districts affected by mineral development in calendar year 2013 through its State General Fund and Federal Mineral Royalties Distribution Fund.  Roller Decl. 7, ¶ 13.

The State also collected over $1.54 million in fiscal year 2013 through its coal severance and coal conversion facilities privilege taxes.  Helms Decl. 3, ¶ 9; 4, ¶ 11; Leadbetter Decl. 5, ¶ 14; *see also* N.D.C.C.  §§ 57-60-02; 57-61-0.  The revenue generated from the coal severance tax was disbursed to the State's Coal Development Trust Fund and administered to counties, cities, and school districts in coal-producing areas.  Schmidt Decl. 4, ¶ 8; N.D.C.C.  §§ 57-62-02.

These federal mineral and tax revenue sources are negatively impacted when federal coal leases are not approved in a timely manner.  Mining companies typically lease a combination of federal, State, and privately-owned coal tracts included within a certain geographic boundary.  These companies submit applications to lease federal coal tracts several years before beginning operations on these tracts.  Deutsch Decl. 4, ¶ 9.  If a mining company's application to lease a federal coal tract is not approved by the time the company reaches the federal coal tract at issue, the company must bypass the tract.  Deutsch Decl. 5, ¶ 13.  In practice, federal coal tracts that are bypassed for this reason are not mined later because it is not economically feasible for the company to return to mine the coal once it is outside the geographic bounds of the tract.  Deutsch Decl. 5, ¶ 14.  As a

result, North Dakota does not receive royalty payments or tax revenues for coal that is passed over due to delayed approval of a federal lease application.  Deutsch Decl. 5, ¶ 14.

The State will suffer injury from the loss of revenue from these federal coal tracts if Plaintiffs are granted the relief they seek.  These federal mineral royalty and state tax revenues are an important source of revenue for the State, and the State would suffer cognizable and immediate injuries should these payments cease as a result of disposition of this matter in Plaintiffs' favor.  *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (holding that loss of revenues during an interim period constituted a cognizable injury).

### 2.    Harm to North Dakota's Regulatory Interests.

North Dakota would also suffer injury to its regulatory interests related to the federal coal leasing program.  The State has devoted considerable resources to develop and implement the ND Program.  The ND Program is administered by the NDPSC in partnership with the federal government and enables the NDPSC to issue permits for surface coal mining.  Deutsch Decl. 2, ¶¶ 3, 4.  Federal coal reserves within North Dakota are interspersed with tracts where the coal is owned by either the State or private parties.  Deutsch Decl. 4, ¶ 9.  All federal coal is located under surface that is State- or privately-owned.  Deutsch Decl. 4, ¶ 9.  Mining companies are therefore required to obtain rights to the coal from the

federal government and to acquire permits to use the surface from the NDPSC before beginning to mine.  Deutsch Decl. 4, ¶ 11.  Pursuant to the ND Program, NDPSC reviews and evaluates surface mining permit applications, revisions, and renewal applications for mining of federal coal within the state.  Deutsch Decl. 2, ¶¶ 3, 9-11.

The State bears an increased regulatory burden when a federal coal lease is obtained after a state mining permit is issued.  In such circumstances, the mining company must revise its permit to add detailed plans for the federal coal mining, a permit modification that requires public notice and additional labor hours and resources from the NDPSC.  Deutsch Decl. 5, ¶ 12.  The State has regulatory interests in the timely and consistent administration of this ND Program, and it will not be able to administer the ND Program effectively if the federal leasing structure becomes unclear.  Thus, North Dakota will suffer injury to its regulatory interest if this Court grants Plaintiffs' requested relief and enjoins the federal coal leasing program.

**B.     Plaintiffs' Requested Relief Will Injure North Dakota's Interests.**

There is a direct causal relationship between a decision granting Plaintiffs' requested relief and injury to North Dakota.  If this Court awards Plaintiffs' requested relief to suspend the federal coal leasing program, the State will not be able to address federal coal leases under its existing regulatory framework, or to

collect revenues related to federal coal leasing, and it will have an increasingly smaller amount of revenue generated from federal coal to disburse for the benefit of its local governments and school districts. *See Fund For Animals*, 322 at 733; *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 1, 6 (D.D.C. 2008); *Am. Horse Prot. Ass'n*, 200 F.R.D. at 157.

### C.     North Dakota's Injury Is Capable of Redress.

North Dakota's injuries are redressable by a favorable decision from this Court. As a defendant-intervenor, North Dakota herewith requests that this Court dismiss Plaintiffs' suit and deny a potential injunction on issuing new and revised coal leases while the BLM undertakes a supplemental NEPA review.  Should this Court so rule, the State will avoid injury to its regulatory and financial interests in the federal coal leasing system.  North Dakota therefore meets the requirements of constitutional standing.

## II.     North Dakota Is Entitled to Intervene As A Matter of Right.

Federal Rule of Civil Procedure 24(a)(2) states in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus, a party seeking intervention of right must demonstrate that (1) its application is timely; (2) it has a cognizable interest in the property or transaction; (3) its interest would be impaired by disposition of the action; and (4) its interests are not adequately represented by existing parties. *Jones v. Prince George's County, Md.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003); *Fund for Animals*, 322 F.3d at 731 (citation omitted). A party requesting intervention as of right must also demonstrate Article III standing. *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998). North Dakota meets these four requirements.

### A.   North Dakota's Application For Intervention Is Timely.

Fed. R. Civ. P. 24(a) requires that a motion to intervene be timely filed. A court will determine a motion's timeliness "in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicants' rights, and the probability of prejudice to those already parties in the case." *Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008) (citation omitted). "The critical factor is whether any 'delay in moving for intervention will prejudice the existing parties to the case.'" *Akiachak Native Cmty.*, 584 F. Supp. at 5 (citation omitted).

The State files this motion to protect its several interests related to the federal coal leasing program within twelve weeks of Plaintiffs' complaint and

within two weeks of Federal Defendants' motion to dismiss.  The parties in the case will not be prejudiced by the State's intervention, as the State fully intends to assist the Court with the efficient conduct of the proceedings.

North Dakota has reviewed the intervention terms that Plaintiffs proposed in their February 13, 2015 response to Wyoming's motion to intervene.  Pls.' Resp. to Mot. to Intervene, ECF Doc. No. 14 at 2.  The State does not agree to be forced to file a joint brief with future potential parties that may be granted intervention.  Given the State's distinct interests discussed herein, North Dakota prefers to file its own pleadings subject to a condition to confer and avoid duplication and excess briefing as appropriate.

 This Court has routinely granted intervenor status without imposing limitations on participation.  *See, e.g.*, Memorandum & Order, *Mayo v. Jarvis*, No. 14-1751-RC (D.D.C. Nov. 12, 2014) (granting intervention without restriction); *see also* Minute Order granting Motion to Intervene, *Powder River Basin Res. Council v. BLM*, No.12-00996-RMC (D.D.C. Sept. 24, 2012) (imposing only a page limit on briefing).  However, should the Court determine that such limitations are desirable, North Dakota believes that the restrictions should not be any more severe than those implemented by Judge Kollar-Kotelly in *WildEarth Guardians v. Salazar*, No. 10-01174-CKK (D.D.C.).  *See* Order, *WildEarth Guardians v.*

13

*Salazar*, No. 10-01174-CKK (D.D.C. Dec. 6, 2010) (order limiting intervenors'

participation in the case).

For the reasons stated above, the State's motion to intervene is timely.  *See*

*Fund for Animals*, 322 F.3d at 735 (intervention motion is timely when filed within

two months of the complaint); *Me-Wuk Indian Cmty. of the Wilton Rancheria v.*

*Kempthorne*, 246 F.R.D. 315, 319 (D.D.C. 2007) (intervention motion is timely

when filed less than three months after the complaint); *Hardin v. Jackson*, 600 F.

Supp. 2d 13, 16 (D.D.C. 2009) (intervention motion is timely where discovery had

not occurred and the court had not yet issued a decision on the merits).

### B.    North Dakota Has Significant Legally Cognizable Interests That Are Affected By This Litigation.

North Dakota has "an interest relating to the property or transaction that is

the subject of the action[.]"  Fed. R. Civ. P. 24(a)(2).  The D.C. Circuit determines

whether a party has a legally cognizable interest by analyzing the "'practical

consequences' of denying intervention, rather than [] 'revert[ing] to a narrow

formulation that interest means a specific legal or equitable interest in the chose.'"

*Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 105 F.R.D. 106, 110

(D.D.C. 1985) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

"The court's inquiry, then, is to determine whether circumstances are such that 'the

goal of disposing of lawsuits by involving as many apparently concerned personnel

as is compatible with efficiency and due process . . . may be met' by allowing

14

intervention." *Indep. Petrochemical Corp.*, 105 F.R.D. at 111 (citing *Smuck v. Hobson*, 408 F.2d 175, 178 (D.C. Cir. 1969) (internal alterations omitted).  The Circuit further holds that a party requesting intervention will satisfy this "interest" element by meeting the Article III standing requirements.  *See Fund for Animals*, 322 F.3d at 731 (citation omitted); *Jones*, 348 F.3d at 1018.

As demonstrated in Section I above, the State has constitutional standing and therefore meets the "interest" test under Federal Rule of Civil Procedure 24(a). North Dakota received over $1 million in coal-related revenue from federal mineral royalty disbursements and federal coal lease bonus and rental payments in fiscal year 2013.  Roller Decl. 5, ¶ 10; 6, ¶ 12.  It also received over $1.54 million in coal-related severance taxes and coal conversion facilities privilege taxes in fiscal year 2013.  Helms Decl. 3 ¶ 9, 4 ¶ 11; Leadbetter Decl. 5, ¶ 14.  The State also has regulatory interests in the timely and consistent administration of the ND Program that it administers in conjunction with the federal government.  North Dakota would suffer injury to these interests if this Court grants the relief sought by Plaintiffs, and this injury is redressable by a favorable decision from this Court. Accordingly, North Dakota has significantly cognizable legal interests that are affected by this litigation.

**C.      Disposition of this Action May Impair or Impede North Dakota's Ability to Protect Its Interests.**

Disposing of this litigation in Plaintiffs' favor "may as a practical matter impair or impede [North Dakota's] ability to protect [its] interests." Fed. R. Civ. P. 24(a)(2).  When addressing impaired interests, courts in this Circuit consider "the 'practical consequences' of denying intervention, even where the possibility of future challenge to the regulation remain[s] available." *Fund For Animals,* 322 F.3d at 735 (citation omitted).  "Practical consequences" exist where a party would lose revenue during an interim period.  *Fund For Animals*, 322 F.3d at 735 (citation omitted); *see also WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 19 (D.D.C. 2010).  District of Columbia courts have also found practical consequences where setting aside agency action "could practically impair the proposed intervenor's interest since the proposed intervenor could no longer rely on the agency's announced decision and would need to restart the administrative process." *Atlantic Sea Group, LLC v. Connaughton*, 592 F. Supp. 2d 1, 6-7 (D.D.C. 2008) (citing *Am. Horse Prot. Ass'n*, 200 F.R.D. at 158); *see also Fund For Animals*, 322 F.3d at 735 (citation omitted) ("[T]he task of reestablishing the status quo if the [Plaintiff] succeeds will be difficult and burdensome."). Furthermore, the effects of stare decisis can also supply the requisite impairment of interest.  *Neusse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967).

16

As detailed above, North Dakota has protectable financial and regulatory interest related to the federal coal leasing program.  The State's financial interests would be impaired if this Court enjoins the federal coal leasing process pending the BLM's decision on how to proceed, because the State's federal coal-related revenue stream would dry up as coal leases expired.  The State's regulatory interests would also be impaired, as the federal coal leasing program would be returned to the administrative process.  This uncertainty or delay regarding federal lease applications could cause  mining companies to request revisions to their mining permits, and the NDPSC would in turn be required to expend significant effort to address these revision requests.  Each would result in a significant change to the status quo.

The State would be affected by the adverse effects of stare decisis.  North Dakota regulates and receives substantial additional revenues related to several other minerals under the Mineral Leasing Act of 1920.  These minerals may be governed by NEPA documents that may not address the impact of greenhouse gasses generated by the industry for that mineral.  Thus, if the Court requires Federal Defendants to undertake new NEPA analysis and issue a supplemental PEIS to address the asserted effects of greenhouse gasses in this case, the opinion could be used as precedent in a potential attempt to compel the Federal Government to address greenhouse gases in older NEPA documents related to

other minerals.  Accordingly, a ruling in Plaintiffs' favor would impair North

Dakota's ability to protect its additional and distinct interests.

### D.  North Dakota's Interests Are Not Adequately Represented by Existing Parties

A movant may satisfy Rule 24(a)(2)'s fourth requirement by demonstrating

only that representation may be inadequate.  This burden is "minimal."  *Natural*

*Res. Def. Council v. Costle*, 561 F.2d 904, 911 (D.C. Cir. 1977)  (citing, *Trbovich*

*v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972)).  "Merely

because parties share a general interest in the legality of a program or regulation

does not mean that their particular interests coincide so that representation by the

agency alone is justified."  *Am. Horse Prot. Ass'n v*, 200 F.R.D. at 159; *see also*

*Fund for Animals*, 322 F.3d at 735-36.

Further, North Dakota cannot be presumed to be adequately represented by

the DOI/BLM, a federal agency, since the interests North Dakota seeks to protect

are State and local interests not necessarily shared or represented by the DOI/BLM.

North Dakota has specific and independent objectives of protecting State-specific

revenue that it receives through federal coal leasing and the state coal tax

provisions, as well as its ability to use these funds to support its localities and

school districts.

Conversely, Federal Defendants are interested in protecting the broader

national public interests.  If North Dakota is not permitted to intervene, the

interests of both the State and its local governments would not be adequately

represented.  Moreover, beyond their different interests and objectives in this case,

North Dakota, Plaintiffs, and DOI/BLM may disagree about issues during the

course of litigation, especially the nature of any potential remedy or the terms of

any potential settlement of the case.  *See NRDC v. Castle*, 561 F.2d 904, 906-08,

912-13  (D.C. Cir. 1997) (interest in implementation of settlement sufficient

grounds for intervention as of right).  North Dakota therefore satisfies the "minimal

burden" of showing that Federal Defendants' representation "may be inadequate."

### III. In the Alternative, The Court Should Grant North Dakota Permissive Intervention Pursuant to Federal Rule of Civil Procedure 24(b).

Alternatively, this Court should allow North Dakota to intervene

permissively in this action under Federal Rule of Civil Procedure 24(b), which

provides in relevant part:

> Upon timely application, anyone may be permitted to
> intervene in an action . . . when an applicant's claim or
> defense and the main action have a question of law or
> fact in common.

Fed. R. Civ. P. 24(b)(1)(B).  The D.C. Circuit requires three showings for

permissive intervention: "(1) an independent ground for subject matter jurisdiction;

(2) a timely motion; and (3) a claim or defense that has a question of law or fact in

common with the main action."  *Equal Employment Opportunity Comm'n v. Nat'l

Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).  A reviewing court

"'shall consider whether the requested intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Friends of Animals*, 452 F. Supp. 2d at 68 (quoting Fed. R. Civ. P. 24(b)).  The decision to allow intervention under Rule 24(b) is "inherently discretionary." *Equal Employment Opportunity Comm'n*, 146 F.3d at 1046.

## A.   This Court Has Jurisdiction Over North Dakota's Defenses To Plaintiffs' Claims.

North Dakota satisfies the jurisdictional requirement for permissive intervention because all of its affected interests arise from Plaintiffs' claims. "Requiring an independent basis for jurisdiction makes sense in cases involving permissive intervention, because the typical movant asks the district court to adjudicate an additional claim on the merits." *Equal Employment Opportunity Comm'n*, 146 F.3d at 1046.  In this case, however, North Dakota does not ask the Court to adjudicate any additional claims.  Rather, all of the State's defenses in this case relate to the Plaintiffs' claim against Federal Defendants.  To the extent this Court has jurisdiction over Plaintiffs' pending claim, and because North Dakota seeks intervention only to defend against that claim, the State meets this jurisdictional requirement.

## B.   The Motion Is Timely.

The timeliness requirement under Fed. R. Civ. P. 24(b) seeks to prevent undue delay or prejudice to the original parties' adjudicative rights.  *Equal*

*Employment Opportunity Comm'n*, 146 F.3d at 1045; *Humane Soc'y of the U.S. v. Clark*, 109 F.R.D. 518, 521 (D.D.C. 1985).  As described in Section IA above, North Dakota's motion is timely considering the early stage of this litigation and the fact that the State's participation in this suit would not prejudice the original parties.

### C.   North Dakota's Defenses Share Common Facts And Law With Plaintiffs' Challenge To The Federal Coal Leasing Program.

North Dakota does not need to establish that it has an interest relating to the main action in order for the Court to grant permission to intervene under Fed. R. Civ. P. 24(b).  The Rule "dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation."  *Sec. & Exch. Comm'n v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940).

Rather, courts consider whether intervention will "contribute to the full development of the factual and legal issues presented."  *See, e.g., Humane Society of the United States v. Clark*, 109 F.R.D. 518, 521 (D.D.C. 1985); *see also Natural Res. Def. Council, Inc. v. Tennessee Valley Auth.*, 340 F. Supp. 400, 408-09 (S.D.N.Y. 1971) (granting permissive intervention where applicant for intervention in an action alleging failure to comply with NEPA had a "long-standing interest in and familiarity with strip-mining [the activity alleged to violate NEPA], expertise that may be helpful in clarifying the facts and issues in this case"), *rev'd on other grounds*, 459 F.2d 255 (2d Cir. 1972)).

21

North Dakota has been actively involved in regulating coal mining for over three decades.  Deutsch Decl. 2-3, ¶ 4; 45 Fed. Reg. 82,214 (Dec. 15, 1980).  North Dakota will present factual and legal arguments to contribute to the full development of the issues presented and demonstrate why Plaintiffs are not entitled to the requested relief.  The State will protect its interests by raising defenses to Plaintiffs' allegations that Federal Defendants violated the National Environmental Policy Act and the Administrative Procedure Act by not supplementing the PEIS.  Furthermore, the State's participation will not prejudice any party.  North Dakota therefore satisfies the requirements of Fed. R. Civ. P. 24(b) and requests that this court grant it permissive intervention in this matter.

## CONCLUSION

The Court should grant North Dakota's motion to intervene as of right as a defendant for all pursuant to Fed. R. Civ. P. 24(a)(2).  In the alternative, The State should be granted permissive intervention pursuant to Fed. R. Civ. P. 24(b).

Respectfully submitted this 19th day of February, 2015.

/s/ *Paul M. Seby*

Paul M. Seby  (Colo. State Bar No. 27487)
Special Assistant Attorney General
Holland & Hart, LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202-3979
Phone:  (303) 295-8430

Fax:  (303) 291-9177
pmseby@hollandhart.com

Lauren R. Caplan  (D.C. Bar No. 1009499)
Special Assistant Attorney General
Holland & Hart, LLP
975 F Street NW, Suite 900
Washington, D.C. 20004
Phone:  (202) 654-6919
Fax:  (202) 747-6520
lrcaplan@hollandhart.com

**ATTORNEYS FOR PROPOSED
DEFENDANT-INTERVENOR
STATE OF NORTH DAKOTA**