JOHN C. CRUDEN
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

JOHN S. MOST
Trial Attorney, Natural Resources Section
601 D Street, N.W., Washington, D.C. 20004
Voice: (202) 616-3353, Fax: (202) 305-0506
John.Most@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————
                                                    )
WESTERN ORGANIZATION OF RESOURCE          )
COUNCILS, FRIENDS OF THE EARTH             )
                                                    )
               Plaintiffs,                          )
v.                                                  )          Case Number: 1:14-cv-1993-RBW
                                                    )          Honorable R. B. Walton
JEWELL *et al.*,                                    )
                                                    )
               Federal Defendants,                  )
                                                    )
and                                                 )
                                                    )
THE STATE OF WYOMING,                        )
                                                    )
               Defendant Intervenor.                )
———————————————————————)


**FEDERAL DEFENDANT'S REPLY IN SUPPORT**
**OF THEIR CORRECTED MOTION TO DISMISS**

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................3

     I.     Plaintiffs' Claim under 5 U.S.C. § 706(1) must be dismissed because there is no legal duty to supplement the 1979 EIS............................................................3

     II.    Plaintiffs' Claim under 5 U.S.C. § 706(2) must be dismissed because Plaintiffs concede that they do not challenge a final agency action .......................7

CONCLUSION .......................................................................................................................7

## INTRODUCTION

Federal Defendants hereby reply in support of their Rule 12(b)(6) Motion to Dismiss.  ECF No. 13-1 ("Motion").  Defendants are entitled to an order of dismissal and judgment as a matter of law because the Complaint identifies no legal duty on the part of the Department of the Interior to supplement the 1979 environmental impact statement ("EIS") at issue in this case.  Plaintiffs' opposition brief, ECF No. 15 ("Opp."), neither corrects nor excuses this deficiency.

As the Motion explains, the EIS was prepared to comply with the National Environmental Policy Act ("NEPA") in connection with Interior's 1979 decision to promulgate new coal leasing regulations under the Mineral Leasing Act of 1920 ("MLA").  The regulations established the modern coal leasing system, incorporating provisions to meet requirements of NEPA and other newly-enacted statutes.[1]  Because the Complaint identifies no mandatory duty to supplement the EIS, as for example if Interior had proposed to modify the leasing system, it fails to state a cognizable claim under section 706(1) of the Administrative Procedure Act ("APA").  5 U.S.C. § 706(1).

Plaintiffs' opposition brief contends that a legal duty to supplement the EIS exists because the coal leasing program is an ongoing affair, insofar as it is "made up of similar but separate major federal actions."  Opp. 8.  This circumstance, in Plaintiffs' view, automatically triggers a duty to supplement under 40 C.F.R. § 1502.9(c)(1), if significant new information comes to light.  *Id.* (arguing that, if an agency has prepared a programmatic EIS, any such program "is itself an ongoing major federal action").  But Plaintiffs misstate the law in suggesting that some *per se* rule demands a supplement for the purpose of considering new information simply because a programmatic EIS

---

[1] The newly-enacted statutes include the Federal Land Policy and Management Act of 1976, 43 U.S.C. §§ 1701-1787 ("FLPMA"), the Federal Coal Leasing Amendments Act ("FCLAA"), Pub. L. No. 94-377, 90 Stat. 1085 (1976), and the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201-1328.

has been prepared.  Such a construction would render agency decisionmaking "intractable" in ways not contemplated by the Supreme Court in *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360 (1989).  *See id*. at 373 (discussing the problem of intractable decisionmaking, where new information routinely becomes "outdated by the time a decision is made").  Further, Plaintiffs' characterization of the leasing program ignores provisions of the 1979 regulations which expressly require NEPA analysis for each and every leasing decision made, 43 C.F.R. § 3425.3, a requirement which continues in force today.

Ultimately, Plaintiffs' theory fails because it relies on an incorrect premise: that the leasing program embodies some national plan for coal development.  It does not.  The 1979 regulations for the lease-by-application system (now BLM's exclusive leasing system) simply establish *how* lease application and approval will occur.  This is not some "national long-term program," Opp. 10, that could be meaningfully analyzed in a supplemental EIS.  Rather, it is a decentralized, industry-driven system that requires the Bureau of Land Management ("BLM") to respond meaningfully to applications received.  *See Coal Management, Federally Owned Coal*, 44 Fed. Reg. 42,584, 42,625 (July 19, 1979) (Final Rulemaking) (establishing procedures for "leasing on application" outside of coal production regions (*see* 43 C.F.R. Subpart 3425).   When examined under a proper characterization of the leasing program, it is clear BLM has no legal duty to supplement the EIS.

Federal Defendants are also entitled to an order of dismissal with regard to Plaintiffs' claim under 5 U.S.C. § 706(2), because the Complaint fails to identify any final agency action that affects or aggrieves Plaintiffs within the meaning of 5 U.S.C. § 702.  Although the Complaint asserts entitlement to relief under section 706(2), Plaintiffs' opposition brief clarifies that their claim is not directed at the "federal coal management program" itself, or any other final federal action for that matter; their claim is instead narrowly directed at the BLM's alleged failure to prepare a

supplemental EIS.  *See* Opp. 13-14.  In so asserting, Plaintiffs concede that they have not alleged a cognizable challenge to final agency action under 5 U.S.C. § 706(2).  Accordingly, their claim under section 706(2) must be dismissed.

## ARGUMENT

I.      **Plaintiffs' Claim under 5 U.S.C. § 706(1) must be dismissed because there is no legal duty to supplement the 1979 EIS.**

In their opening brief, Federal Defendants explained that the NEPA regulation requiring in some instances supplementation of prior analysis, 40 C.F.R. § 1502.9(c), has no application because, by its plain language, it applies only to "proposed actions."  Motion 10.  Here, BLM has not proposed to take any action in reliance on the 1979 EIS, nor has it proposed to modify the lease-by-application system.  Rather, once BLM adopted the 1979 rules, the proposed action – promulgating rules for the modern leasing system – was completed.  *See Norton v. S. Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55, 73 (2004) (declining to require supplementation because approval of a FLPMA land use plan completed the proposed action).  Plaintiffs allude to unspecified leasing decisions in arguing that the 1979 Rule is an "ongoing major federal action," Opp. 8, but these are distinct federal actions, subject to individualized NEPA analysis.  43 C.F.R. § 3425.3.  And at no time were these leasing decisions ever identified as aspects of the proposed action that prompted the EIS.

Plaintiffs disregard these legal limitations and contend, based on a misreading of three cases, that supplementation is required where environmentally significant government action remains to be taken "in the Program."  Opp. 6 (capitalization in original).   The first case Plaintiffs rely on, *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360 (1989), cannot support their theory because it did not involve a program.  Rather, it involved a single project, the construction of a dam on Elk Creek in southwest Oregon.  In 1979, when the case was argued and decided in the Supreme Court, dam construction was about one-third completed.  *See* 490 U.S. at 367.  Even though a great

deal of construction remained, the Court upheld the decision of the Army Corps of Engineers not to prepare a supplemental EIS.  In doing so, the Court observed in a passage quoted by Plaintiffs that there comes a point in the life of a project where it "make[s] sense to hold NEPA inapplicable."  However, "up to that point, NEPA cases have generally required agencies to file [EISs] when the remaining governmental action would be environmentally significant."  *Id.* at 371-72 (internal quotation marks and citation omitted).

*Marsh* is of no assistance to Plaintiffs.  First, as the quoted language indicates, the Court's rationale is directed at an individual project, not an ongoing program.  The Court never considered any programmatic EIS, let alone the question whether a programmatic EIS must be supplemented.  Second, the quoted language makes clear that for a duty to supplement to arise, there must be "remaining governmental action."  *Id.* at 372.  Plaintiffs' argument fails because they point to nothing remaining to be done under the proposed action examined in the 1979 EIS.  To remedy this flaw, Plaintiffs argue that the distinct and independent leasing decisions obliquely referred to in the Complaint constitute "remaining governmental action" vis-à-vis the 1979 Rule.  Opp. 17.  But such reasoning has been rejected by the Supreme Court.  In *SUWA*, the Court held that plaintiffs had not stated a proper claim for relief under 40 C.F.R. § 1502.9(c) because BLM's adoption of a land use plan, just like its promulgation of the 1979 Rule in this case, completed the proposed action.  *SUWA*, 542 U.S. at 73.[2]

---

[2] Plaintiffs overstate their case in suggesting that the "blinders to adverse environmental effects" were "removed" at the time of the 1979 EIS only to be "restored" thereafter.  Opp. 7 (quoting *Marsh*, 490 U.S. at 371).  The charge is unfounded.  Plaintiffs present no evidence suggesting that leasing decisions have been made with blinders on. To the contrary, BLM dutifully complies with NEPA requirements in its coal leasing decisions, as this Court has twice recently held.  *See WildEarth Guardians v. Salazar*, 880 F.Supp.2d 77 (D.D.C. 2012) ("West Antelope II" leasing decision); *aff'd*, 738 F.3d 298 (D.C. Cir. 2013); *WildEarth Guardians v. Bureau of Land Management*, 8 F.Supp.3d 17 (D.D.C. 2014), *appeal dismissed*, No. 14-5137, 2014 WL 3014914 (D.C. Cir. June 20, 2014) ("Belle Ayr/Caballo" leasing decision).

In their next attempt to show that supplementation is demanded by the ongoing nature of "the Program," Plaintiffs rely on the Ninth Circuit's decision in *Friends of the Clearwater v. Dombeck*, 222 F.3d 552 (9th Cir. 2000), which involved specific timber sales, not a program. Plaintiffs describe the question before the panel as "whether the Forest Service was required to supplement a 1987 [programmatic EIS] for a forest plan . . . ." Opp. 7. This is incorrect. Like *Marsh*, *Friends of the Clearwater* did not consider whether a programmatic EIS must be supplemented. Rather it considered the need to supplement a separate "site-specific EIS" prepared two years later, in 1989, for four timber sales (two of which had been completed prior to litigation). 222 F.3d at 555. Thus the plaintiffs in *Friends of the Clearwater* never asserted that the programmatic EIS required supplementation; rather they asserted that the Forest Service must supplement the site-specific EIS prepared in 1989 for the timber sales themselves. *Id.* Because *Friends of the Clearwater* did not address supplementation of a programmatic EIS, it lends no support to Plaintiffs' theory in this case.

Third, Plaintiffs rely to no avail on the D.C. Circuit's decision in *National Wildlife Federation v. Appalachian Regional Commission*, 677 F.2d 883 (D.C. Cir. 1981). Although the case involved a demand for a programmatic EIS, and thus might appear to have promise for Plaintiffs beyond that of *Marsh* or *Friends of the Clearwater*, the D.C. Circuit was unconvinced and held that a programmatic EIS was not required. It did so because, as in this case, individual site-specific NEPA analyses were being prepared. 677 F.2d at 884. Plaintiffs' characterization of the decision as addressing whether it was necessary to supplement an *existing* programmatic EIS is simply incorrect. *See* Opp. 8 (claiming that the decision addressed "whether a federal program for which a programmatic EIS *had been prepared*, is itself an ongoing major federal action" under NEPA) (emphasis added). Correctly stated, the decision addressed whether, near the end of a series of federal highway construction projects, a programmatic EIS was required in the first place. The Court

5

held such analysis was not required because it would be "largely retrospective," among other things. 677 F.2d at 884.

Given these major factual distinctions, none of the three cases relied on by Plaintiffs supports their strained theory. And all three cases were decided before the decision in *SUWA*, in which the Supreme Court made explicit what was implicit in *Marsh*: that section 1502.9(c) has no application to completed actions. *SUWA*, 542 U.S. at 73 (concluding supplementation was not required because approval of a FLPMA land use plan completed the proposed action); *accord Wildearth Guardians*, 880 F.Supp.2d at 90 (approval of BLM's record of decision completed the proposed agency action, obviating any duty to supplement). In opposition, Plaintiffs dispute *SUWA's* relevance because it "does not address the question of when a [Programmatic EIS] prepared for an ongoing national program requires supplementation." Opp. 9. Federal Defendants agree that the facts of *SUWA* did not present the precise question Plaintiffs pose, but this does not diminish its holding that a duty to supplement under 40 C.F.R. § 1502.9(c) does not arise with respect to completed actions. Plaintiffs decline to confront this point.

Finally, Federal Defendants explained in their opening brief why the Supreme Court's decision in *Kleppe v. Sierra Club*, 427 U.S. 390 (1976), counsels dismissal of Plaintiffs' claims. In *Kleppe*, the Supreme Court reinstated and affirmed this Court's ruling that the complaint stated no claim for relief. The plaintiffs had argued that Interior was required to prepare a region-wide EIS on the impacts of coal operations in the northern Great Plains. The Supreme Court concluded such analysis was not necessary, given the "absence of a proposal for a regional plan of development." 427 U.S. at 401. Plaintiffs here offer minor factual distinctions in an attempt to cast the *Kleppe* holding as irrelevant. Opp. 11. But none of these distinctions negates the clear requirement of *Kleppe* that to establish a duty to act under NEPA, a plaintiff must identify a proposed major federal

action.  Here Plaintiffs have not done so.  Just as the absence of a proposed plan of development in the Northern Great Plains precluded the claim for relief in *Kleppe*, here the absence of a national plan of development precludes any claim that BLM must supplement the 1979 EIS.  Plaintiffs' references to a "national coal management program," Opp. 11, and to a "national program," *id.* 4, simply paint an inaccurate picture.  While the 1979 "lease-by-application" regulations have nationwide applicability, this does not mean they represent some plan of national development.  As discussed, the modern program simply responds to leasing applications received and requires full NEPA analysis in every instance.

## II.     Plaintiffs' Claim under 5 U.S.C. § 706(2) must be dismissed because Plaintiffs concede that they do not challenge a final agency action.

Federal Defendants are also entitled to dismissal of Plaintiffs' claim under 5 U.S.C. § 706(2) because the Complaint fails to identify any final agency action that affects or aggrieves the Plaintiffs within the meaning of 5 U.S.C. § 702.  As the Motion explains, "the person claiming a right to sue must identify some 'agency action' that affects him in a specified fashion," because "[i]t is judicial review 'thereof' to which he is entitled."  *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 882 (1990).  In responding to this argument, Plaintiffs assert that *Nat'l Wildlife Federation* is distinguishable because their claim in this case is not directed at the "federal coal management program" itself, or any other final federal action for that matter; their claim is instead narrowly directed at the BLM's alleged failure to prepare a supplemental EIS.  *See* Opp. 13-14.  In making this assertion, Plaintiffs concede that they have not alleged a cognizable challenge to final agency action under 5 U.S.C. § 706(2).  For this reason, as well as those stated in Federal Defendants' opening brief, Plaintiffs' claim under section 706(2) must also be dismissed.

## CONCLUSION

In sum, the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs' claim under section 706(1) fails as a matter of law because it identifies no mandatory duty to perform a discrete act. *SUWA*, 542 U.S. at 64. And their claim under section 706(2)(A) likewise fails because Plaintiffs do not identify, much less challenge, a final agency action.

For all these reasons, Federal Defendants respectfully ask the Court to dismiss the Complaint for failure to state a claim upon which relief may be granted and to enter judgment for all defendants on both claims for relief.

Respectfully submitted this 25th day of February, 2015,

JOHN C. CRUDEN

Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

 /s/ John S. Most
JOHN S. MOST
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
P.O. Box 7611 Washington, D.C. 20044
202-616-3353 (voice), 202-305-0506 (fax)
john.most@usdoj.gov

*Counsel for Federal Defendants*

Of Counsel

Philip C. Lowe
Office of the Regional Solicitor
Rocky Mountain Region
Department of the Interior
755 Parfet Street, Suite 151
Lakewood, CO 80215

Tel: (303) 231-5353 ext. 274
Fax: (303) 231-5356
E-mail: philip.lowe@sol.doi.gov