James Kaste (Wyo. State Bar No. 6-3244)
Michael J. McGrady (Wyo. State Bar No. 6-4099)
Wyoming Attorney General's Office
123 State Capitol
Cheyenne, Wyoming 82002
(307) 777-6946
(307) 777-3542 *facsimile*
james.kaste@wyo.gov
mike.mcgrady@wyo.gov
*Attorneys for Intervenor- Defendant State of Wyoming*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS and FRIENDS OF THE EARTH, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 1:14-cv-01993-RBW |
| v. | ) ) | |
| SALLY JEWELL, in her capacity as Secretary of the Interior, DEPARTMENT OF THE INTERIOR, NEIL KORNZE, in his capacity as Director, Bureau of Land Management, BUREAU OF LAND MANAGEMENT, | ) ) ) ) ) ) ) | |
| *Defendants*, | ) ) | |
| STATE OF WYOMING, | ) ) | |
| *Intervenor-Defendant.* | ) | |

## STATE OF WYOMING'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Intervenor-Defendant, the State of Wyoming, hereby replies to *Plaintiffs'*
*Response in Opposition to State of Wyoming's Motion to Dismiss* as follows:

## ARGUMENT

Throughout the briefing on the pending motions to dismiss, it seems the
parties use the word "program" to talk past each other.  For its part, the Court should
look beyond the loose use of the word "program," and focus instead on the substance
of the 1979 programmatic environmental impact statement and the 1985 supplement
to that statement.  If the Court reviews the entirety of those documents, it will
assuredly be left with the definite and firm conviction that the programmatic
statement was created to evaluate the environmental impacts associated with the
proposed regional leasing program.

In this regard, the flow charts contained in Figures 3-1 through 3-4 of the 1979
programmatic statement are particularly instructive, as they summarize the preferred
federal coal management program under consideration, and completely exclude the
lease-by-application process.  *See* U.S. Dept. of the Interior, Federal Coal
Management Program:  Final Environmental Impact Statement at 3-4, 3-14 through
3-16 (April 1979).  Similarly, the 1985 supplement to the 1979 programmatic
statement evaluated the "proposed action to continue the federal coal management
program" and among other alternatives "Leasing by Application."  Federal Coal
Management Program: Final Environmental Impact Statement Supplement at 4

(Oct. 1985).  In fact, these documents are replete with additional examples of the dichotomy.

In light of the BLM's clear statements, it would seem beyond dispute that it was the proposal to adopt the regional leasing program as the "federal coal management program" that necessitated the preparation of the programmatic statement.  Government driven regional leasing is precisely the type of broad federal action that should be evaluated programmatically.  *See* 40 U.S.C. § 1502.4(b).  While the lease-by-application process, driven by private parties based on market conditions and industry needs, is not appropriate for programmatic evaluation.

Because the broad national program has not been employed since 1990, it is neither sensible nor does the National Environmental Policy Act (NEPA) require supplementation of that evaluation until the BLM proposes to take some action "bearing on the proposed action or its impacts."  40 U.S.C. § 1509.9(c)(1)(ii).  Here, the conservation organizations have failed to allege that the BLM has any plans to revive the regional leasing program.  Accordingly, the conservation organizations' claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

The conservation organizations make three specific assertions in their opposition that warrant further reply.  First, they point out that the 1979 Final Rule provided for both the regional leasing and lease-by-application leasing mechanisms.  Plfs. Opp. at 12; 44 Fed. Reg. 42,615 (July 19, 1979).  This is true, but not

dispositive.  As the federal Defendants point out in their reply, the provisions of the 1979 Final Rule related to the lease-by-application process merely set forth how lease application and approval will occur in certain circumstances.  Fed. Def. Reply at 2.  Although promulgated at the same time, the two leasing mechanisms are not part and parcel of one comprehensive "program."  In fact, the BLM has repeatedly made clear that the lease-by-application process is not the federal coal management program.  For example, the 1985 Supplement states unequivocally that there is a "federal coal management program," and alternatively, leasing-by-application.  *See, e.g.,* 1985 SEIS at 4.  The conservation organizations' argument to the contrary based on the mistaken assertion that the BLM cannot do two things in one set of rules should be rejected.

Second, the conservation organizations assert that this Court has addressed and rejected the notion that the 1979 Final Rule was limited to or prioritized regional leasing.  Plfs. Opp. at 13.  This is also true, but unrelated to the issue before the Court in this case.  In *WildEarth Guardians v. Salazar*, the plaintiffs asserted that the BLM was required to recertify the Powder River Basin as a coal production region.  783 F. Supp. 2d 61, 70 (D.D.C. 2011).  In support of this assertion, they argued that because the 1979 Final Rule described the regional leasing process as the "normal leasing process," the BLM's broad statutory and regulatory discretion to certify, decertify, or recertify the basin had been limited.  *Id.* 72-73.  This Court rejected that

assertion and concluded that there was no indication that the BLM intended to prioritize the regional leasing process over the lease-by-application process. *Id.* at 73. Whether the BLM prioritized the regional leasing program over the lease-by-application process in the 1979 Final Rule is not the same issue as whether the federal coal management program evaluated in the programmatic statement somehow incorporates the alternative lease-by-application process. Accordingly, *WildEarth Guardians*, does not provide useful guidance on the specific issue raised by the conservation organizations in this case.

Third, the conservation organizations imply that the BLM continues to tier individual leasing decisions to the 1979 programmatic statement and its 1985 supplement. Plfs. Opp. at 14. This is not true. Before a lease sale is held pursuant to an application the BLM is required to prepare an appropriate NEPA analysis. 43 C.F.R. § 3425.3. However, these site specific analyses are not tiered to the 1979 programmatic statement or its supplement. *See, e.g.,* Final Environmental Impact Statement for the South Gillette Coal Lease Applications (August 2009); Final Environmental Impact Statement for the Wright Area Coal Lease Applications.[1]

---

[1] Available at
http://www.blm.gov/wy/st/en/info/NEPA/documents/hpd/SouthGillette.html and
http://www.blm.gov/wy/st/en/info/NEPA/documents/hpd/Wright-Coal.html

By contrast, when the BLM was using the regional leasing program, NEPA documents related to regional leasing decisions were tiered to the programmatic statements.  *See, e.g.,* Powder River Final Environmental Impact Statement Coal at H-72 (Dec. 1, 1981) ("Tiering of environmental assessment has been achieved for the Powder River Basin and is included in documents such as the Federal Coal Management Program FEIS, Northern Powder River Basin Coal FEIS, and the Eastern Powder River Basin Coal FEIS.").[2]  Thus, BLM has consistently viewed the two different leasing processes as requiring distinct NEPA analyses, and the programmatic statements have no continuing applicability to lease-by-application decisions as the conservation organizations assert.

## CONCLUSION

The long and short of this matter is that while coal leasing continues, the federal coal management program that necessitated the 1979 programmatic statement lies dormant.  Current coal leasing decisions are based on site specific NEPA documents that analyze the effects of specific leasing decisions on global climate change in a manner that has consistently withstood judicial scrutiny.  *See, e.g., WildEarth Guardians v. Jewel*, 738 F.3d 298 (D.C. Cir. 2013); *WildEarth Guardians v. BLM*, 8 F. Supp. 3d 17 (D.D.C. 2014).  While the conservation

---

[2] Available at
http://www.blm.gov/style/medialib/blm/wy/information/NEPA/cfodocs/pr_coal_feis.Par.83655.File.dat/PR_Coal_FEIS.pdf

organizations may prefer that the BLM revive the regional leasing program and with it a broader NEPA analysis, this Court has found that the BLM is not required to do so.  783 F. Supp. 2d at 73.  Absent such a requirement or a change in the BLM's course of action, the conservation organizations' complaint should be dismissed.

WHEREFORE, the State of Wyoming requests that the court grant its motion and dismiss the conservation organizations' claim with prejudice.

Submitted this 23rd day of March, 2015.

/s/ James Kaste
James Kaste (Wyo. State Bar No. 6-3244)
Michael J. McGrady (Wyo. State Bar No. 6-4099)
Wyoming Attorney General's Office
123 State Capitol
Cheyenne, Wyoming 82002
(307) 777-6946
(307) 777-3542 *facsimile*
james.kaste@wyo.gov
mike.mcgrady@wyo.gov
*Attorneys for Intervenor-Defendant*
*State of Wyoming*