**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
|  | ) |  |
| WESTERN ORGANIZATION OF RESOURCE | ) |  |
| COUNCILS and FRIENDS OF THE EARTH, | ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | Civil Action No. 14-1993 (RBW) |
| SALLY JEWELL, in her capacity as Secretary of | ) |  |
| the Interior, DEPARTMENT OF THE | ) |  |
| INTERIOR, NEIL KORNZE, in his capacity as | ) |  |
| Director, Bureau of Land Management, | ) |  |
| BUREAU OF LAND MANAGEMENT, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

_____)

## ORDER

The plaintiffs, Western Organization of Resource Councils and Friends of the Earth, filed

this civil action against the defendants—the Department of the Interior ("Interior"), Sally Jewell

in her capacity as Secretary of the Interior, the Bureau of Land Management ("Bureau"), and

Neil Kornze in his official capacity as Director of the Bureau—"for declaratory and injunctive

relief," concerning the defendants' alleged "failure . . . to supplement its environmental impact

analysis of the federal coal management program . . . [and] assess the effect of the [p]rogram on

the global climate, as required by the National Environmental Policy Act[,] [42 U.S.C. § 4321

(2012)] and the Administrative Procedure Act[,] [5 U.S.C. §§ 702, 706 (2012)]."  Complaint

("Compl.") ¶ 1.  Currently pending before the Court are the State of North Dakota's Unopposed

Motion to Intervene as a Defendant ("N.D. Mot.") and the Wyoming Mining Association's

Unopposed Motion to Intervene as a Defendant ("Wyo. Mining Assoc. Mot.").[1]  Upon careful

consideration of the parties' submissions,[2] the Court concludes for the reasons below that it will

grant both motions to intervene.

## I.     BACKGROUND[3]

### A.  The Federal Coal Management Program

"The federal coal management program is administered by [the Bureau], an agency

within [Interior]."  Compl. ¶ 3.  As of 2013, "[p]ursuant to the federal coal management

program, . . . [the Bureau] manages 309 existing leases in [ten] states across the United States

and continually processes applications for new leases and modifications to existing leases."  Id. ¶

4.  Under the federal coal management program, the Bureau generally employs a "bidding

process," whereby a private party can procure "a lease . . . granting [the private party] the right to

mine coal from federal lands."[4]  Id.  The Bureau "last conducted a comprehensive environmental

---

[1]  The titles of these motions, representing that they are unopposed, are inaccurate.  When the intervenors met and conferred with the plaintiffs, the plaintiffs "[took] no position" on the motions, "but reserve[d] the right to file a response."  N.D. Mot. at 2;  Wyo. Mining Assoc. Mot. at 2.  Subsequent to the parties' meet and confer, the plaintiffs filed an opposition.  Plaintiffs' Consolidated Response in Opposition to Motions to Intervene by State of North Dakota and Wyoming Mining Association ("Pls.' Opp'n").

[2]  In addition to the filings already referenced, the Court considered the following submissions in rendering its decision: (1) the Memorandum in Support of State of North Dakota's Unopposed Motion to Intervene as Defendant ("N.D. Mem."); (2) the Wyoming Mining Association's Memorandum in Support of Its Unopposed Motion to Intervene as Defendant ("Wyo. Mining Ass'n Mem."); (3) the State of North Dakota's Reply to [the] Plaintiffs' Consolidated Response in Opposition to Motions to Intervene by State of North Dakota and Wyoming Mining Association ("N.D. Reply"); (4) the Wyoming Mining Association's Reply to [the] Plaintiffs' Consolidated Response to Motions to Intervene by the State of North Dakota and Wyoming Mining Association ("Wyo. Mining Ass'n Reply"); (5) the State of Wyoming's Unopposed Motion to Intervene ("Wyo. Mot."); and (6) the State of Wyoming's Memorandum in Support of Unopposed Motion to Intervene ("Wyo. Mem.").

[3]  "For purposes of resolving the motions to intervene presently before the Court, the well-pleaded allegations in the [c]omplaint are assumed to be true," and "where appropriate, the Court shall refer to the non-conclusory allegations and record evidence offered by the [p]utative [i]ntervenors in support of their motions to intervene."  Wildearth Guardians v. Salazar, 272 F.R.D. 4, 9 (D.D.C. 2010) (citations and footnote omitted).

[4]  Another member of this Court has previously described "the Bureau's practice and procedure with respect to the leasing of public lands for coal mining operations."  Wildearth Guardians, 272 F.R.D. at 10.

analysis of the [federal coal management] [p]rogram in 1979,"[5] id. ¶ 13, which included a statement by the Bureau that the analysis "would be updated when conditions change sufficiently to require new analyses of national and interregional impacts" of the federal coal management program, id. ¶ 14 (alteration and internal quotation marks omitted).  And neither Interior nor the Bureau has "[ever] supplemented the 1979 analysis with an evaluation of the federal coal management program's effect on climate change."  Id. ¶ 16.

### B.  The Plaintiffs

The plaintiffs are non-profit entities, whose "members live, work, recreate, and conduct other activities in areas adjacent to tracts where coal mining occurs pursuant to leases issued under the federal coal management program," id. ¶ 25, as well as in "areas affected by emissions from electric power plants that burn coal mined under [these] leases," id. ¶ 26.  They allege that their "members are affected by poor air quality associated with mining . . . ."  Id. ¶ 25.  According to the plaintiffs, their members "have . . . substantial interest[s] in [ensuring] they breathe air that will not injure their health," id., as well as using and enjoying these areas for various public purposes, which they cannot do because of the alleged harm from the "combustion of coal," id. ¶¶ 25-26.  Consequently, the plaintiffs seek judicial relief that will require the defendants to "supplement their [1979] . . . analysis to assess the effect on climate change of greenhouse gas emissions resulting from the federal coal management program, or to consider policies that could reduce the effects."  Id. ¶ 9; see also id. ¶ 1.

---

[5]  "Any proposed 'major [f]ederal action[ ] significantly affecting the quality of the human environment' triggers in an agency the obligation to prepare an Environmental Impact Statement . . . discussing in detail the environmental impact of the proposed action, alternatives to the action, and other considerations."  Myersville Citizens for a Rural Cmty., Inc. v. FERC, 783 F.3d 1301, 1322 (D.C. Cir. 2015) (quoting 42 U.S.C. § 4332(C) (2012)).

### C. The Applications for Intervention

Previously, the Court granted the State of Wyoming's ("Wyoming") motion to intervene in this matter. See February 18, 2015 Minute Order. Two additional applicants now seek intervention as well: the State of North Dakota ("North Dakota") and the Wyoming Mining Association (the "Association").[6]

#### 1. North Dakota

"North Dakota is the ninth largest coal producing state in the United States" and produces "[a]pproximately 4.1 million tons of . . . coal . . . from federal coal reserves" every year. N.D. Mem. at 3. "North Dakota has invested significant economic and administrative resources in implementing its role as a regulatory partner in the federal coal leasing program and relies on multiple state agencies—including the [North Dakota] Public Service Commission," (the "Commission") which "administers the State's surface mining and coal reclamation program . . . through a partnership with the United States Office of Surface Mining Reclamation and Enforcement." Id. at 3. "Mining companies submit applications for surface mining permits, permit revisions, and permit renewals" to the Commission, which must then "account for a mining company's federal coal lease status before issuing a permit, revision, or renewal." Id. at 4. "As a result, if [the] mining company does not obtain a federal coal lease in a timely manner, it must request a permit revision and the [Commission] must undergo a comprehensive public notice and approval process." Id.

Further, North Dakota "has significant financial interests in the revenue generated from the federal coal [management] program through federal mineral royalty payments and state severance and conversion taxes." Id. "[T]he federal government disburses to the State fifty[-

---

[6]  Hereinafter, North Dakota and the Association will be collectively referred to as the "applicants."

]percent of royalties received from federal coal leases in North Dakota." Id. "The . . . North

Dakota Office of the State Auditor certifies these royalty payments, along with federal coal lease

bonus payments, and disburses them into accounts for [the] State['s] use." Id. "If [the] mining

companies were unable to obtain leases for federal coal tracts in a timely manner, this revenue

stream would dry up as coal leases expired." Id. at 4-5.

"North Dakota [also] . . . receives revenue related to federal coal leases through a state

severance tax and conversion tax." Id. at 5. "The State imposes a severance tax on all coal

severed for sale or industrial purposes, with limited exceptions." Id. "Portions of these revenues

[are] deposited into the State's Coal Development Trust Fund to use for loans to counties, cities,

and school districts." Id. The State also collects "coal conversion facilities privilege taxes

related to federally-owned, state-owned, and privately-owned coal tracts." Id. "Portions of these

annual collection figures for the conversion tax were generated from federal coal tracts." Id. In

short, North Dakota seeks intervention as it has an "interest in administering an efficient

regulatory program for coal mining and reclamation, and [a] financial interest in revenues

generated from federal mineral royalty payments and state taxes on federal coal." Id.

### 2.  The Wyoming Mining Association

The Association "is a trade organization that represents the interests of its members,

including coal companies that operate in the Powder River Basin and Southwest Wyoming."[7]

Wyo. Mining Ass'n Mem. at 2. The members of the Association "hold federal coal leases

obtained through . . . [the federal] coal management program." Id. at 5; see also id. at 2. They

also "have lease applications . . . that are now in various stages of review and approval by the

---

[7] "The Powder River Basin . . . [is] an area covering approximately 24,000 square miles across northeastern Wyoming and southeastern Montana . . . ." Wildearth Guardians, 272 F.R.D. at 11. "The Powder River Basin, the single largest source of coal in the United States, was first designated as a Coal Production Region in November 1979." Id.

[Bureau]." Id. at 5.  Through the applications, members can "extend the lives of existing mines."

Id.  They have "invest[ed] considerable time, effort and money to develop and submit lease

applications, and must plan years ahead for future coal production."  Id.  And "[g]iven the

[Bureau]'s past grants of coal leases . . . and its current consideration of the [their] lease

applications . . . , the . . . [m]embers have a real expectation that they will be able to proceed with

operations on their existing leaseholds and will be able to obtain additional leaseholds to

continue operations into the future."  Id. at 6.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 24 provides for both intervention as of right and

permissive intervention.  Fed. R. Civ. P. 24.  With respect to intervention as of right, Rule 24

provides that

> [o]n timely motion, the [C]ourt must permit anyone to intervene who . . . claims
> an interest relating to the property or transaction that is the subject of the action,
> and is so situated that disposing of the action may as a practical matter impair or
> impede the movant's ability to protect its interest, unless existing parties
> adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  The District of Columbia Circuit has distilled this rule into four factors:

> (1) the timeliness of the motion; (2) whether the applicant "claims an interest
> relating to the property or transaction which is the subject of the action"; (3)
> whether "the applicant is so situated that the disposition of the action may as a
> practical matter impair or impede the applicant's ability to protect that interest";
> and (4) whether "the applicant's interest is adequately represented by existing
> parties."

Fund For Animals, Inc. v. Norton, 322 F.3d 728, 731 (D.C. Cir. 2003) (quoting Mova Pharm.

Corp. v. Shalala, 140 F.3d 1060, 1074 (D.C. Cir. 1998)); see also Wildearth Guardians v.

Salazar, 272 F.R.D. 4, 12-13 (D.D.C. 2010) (explaining four-factor test).  An applicant "seeking

to intervene as of right must [also] demonstrate that it has standing under Article III of the

Constitution."  Fund For Animals, 322 F.3d at 731-32; id. at 732 ("[B]ecause a Rule 24

intervenor seeks to participate on an equal footing with the original parties to the suit, [the applicant] must satisfy the standing requirements imposed on those parties." (internal quotation marks omitted)).  "Where [the applicant] seeks to intervene as a defendant in order to uphold or defend agency action"—or inaction as the case may be—"it must establish (a) that it would suffer a concrete injury-in-fact if the action were to be set aside, (b) that the injury would be fairly traceable to the setting aside of the agency action, and (c) that the alleged injury would be prevented if the agency action were to be upheld."  Wildearth Guardians, 272 F.R.D. at 13.

Rule 24 also permits intervention where "[o]n timely application," an applicant "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P.  24(b)(2).  "[P]ermissive intervention is an inherently discretionary" function for the Court.  EEOC v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998).  The Circuit has articulated three factors on which permissive intervention is dependent: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action."  Id.  Additionally, a court "must consider whether the [requested] intervention will unduly delay or prejudice the adjudication of the original parties' rights."[8]  Fed. R. Civ. P. 24(b)(3).

## III.    ANALYSIS

### A. Intervention As Of Right

#### 1.  Timeliness

The plaintiffs do not dispute that the applicants' motions for intervention as of right are timely.  See Pls.' Opp'n at 3-5 (failing to challenge timeliness).

---

[8] "The [District of Columbia] Circuit has not resolved whether independent Article III standing is required for permissive intervention."  Norfolk S. Ry. Co. v. Solis, 915 F. Supp. 2d 32, 36 n.1 (D.D.C. 2013).  This issue, however, is of no moment to the Court's analysis.

### 2. Legally Cognizable Interest

The plaintiffs claim, however, that the "interests asserted by the [applicants] are minimal." Pls.' Opp'n at 5. In doing so, it appears that the plaintiffs concede that the applicants have at least <u>some</u> cognizable interest in ensuring that the status quo of the federal coal management program is maintained. Even without this concession, the Court would find that the applicants have significant interests that are implicated by the plaintiffs' lawsuit. <u>See</u> <u>United States v. Morten</u>, 730 F. Supp. 2d 11, 16 (D.D.C. 2010) ("The 'interest' claimed by the would-be intervenor must be 'legally protected.' This test for a legally protected interest is 'primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" (quoting <u>Karsner v. Lothian</u>, 532 F.3d 876, 885 (D.C. Cir. 2008); <u>Seminole Nation of Okla. v. Norton</u>, 206 F.R.D. 1, 8 (D.D.C. 2001))). For example, "Wyoming has an interest in protecting its financial and socioeconomic stake" in the continued viability of the federal coal management program within its borders. <u>Wildearth Guardians</u>, 272 F.R.D. at 18. And similarly, the Association has an interest in ensuring that the federal coal management program remains uninterrupted in order to protect its members' mining investments and operations in Wyoming. <u>See also</u> <u>id.</u> at 15-17.

### 3. Impairment of, or Impediment to, Cognizable Interests

The plaintiffs also contend that "any claim of future harm" to the applicants' asserted interests "is highly speculative." Pls.' Opp'n at 5. The Court disagrees. The inquiry into whether a legally, cognizable interest will be impaired is "not a rigid one: consistent with . . . [Rule 24's] reference to dispositions that may 'as a practical matter' impair the [applicants'] interests, courts look to the 'practical consequences' of denying intervention[.]" <u>Wildearth Guardians</u>, 272 F.R.D. at 13 (quoting <u>Fund for Animals</u>, 322 F.3d at 735) (citation omitted).

As North Dakota correctly observes, "[i]f the Court grants [the] [p]laintiffs' requested relief, the [Bureau] will be prohibited from accepting or approving any application for a new coal lease or modification in North Dakota to an existing lease[,] pending the multi-year development and completion of a supplemental [p]rogrammatic Environmental Impact Statement."  N.D. Reply at 5.  It follows that "no coal leases will be offered for sale in North Dakota, and the State will not be able to collect revenue from these leases."  Id. at 6; see also Wildearth Guardians, 272 F.R.D. at 19 (recognizing harm to interest where "delay" in leasing of coal lands would "prevent [a state] from securing mineral bonus payments, federal mineral royalties, and severance taxes on the use of those lands in the near future" and where resolution of the case "would affect [the state's] financial and socioeconomic stake in the development of coal mining operations within its borders").

Likewise, a resolution in favor of the plaintiffs in this case would harm the interests of the Association.  Its members have "invest[ed] considerable time, effort and money to develop and submit lease applications," which "are now in various stages of review and approval by the [Bureau]."  Wyo. Mining Ass'n Mem. at 5.  If the federal coal management program were "suspend[ed] . . . pending . . . [the] preparation of an expansive national programmatic environmental impact statement—a process that would undoubtedly take several years to complete," "the operations, investments, and financial interests" of the members would be "seriously impair[ed]."  Wyo. Mining Ass'n Reply at 8-9; see also Wildearth Guardians, 272 F.R.D. at 16-17 (finding impairment of interests to coal industry trade organization where if "[p]laintiffs' contentions [were successful, they] . . . may have the practical consequence of delaying or preventing the approval of similar pending lease applications" and where plaintiffs'

positions with respect to the "direct and indirect effects of carbon dioxide emissions . . . would

likely be of concern to," and "may have practical consequences for[,] its members' interests").[9]

### 4.  Adequacy of Representation

The plaintiffs argue that the applicants' interests are adequately protected by Wyoming.

Pls.' Opp'n at 2-3.  More specifically, they argue that Wyoming can adequately protect the

applicants' asserted interests: (1) because "Wyoming is identically situated as North Dakota

relative to this litigation," in that both states "derive[] revenue from federal coal leasing" and

seek intervention "to protect that revenue stream," id. at 3, and (2) because Wyoming and the

Association's "financial interests . . . are entirely aligned," as they both seek to ensure that

"mining of federal coal in Wyoming continues unimpeded," id. at 4.  North Dakota, in response,

argues that "Wyoming cannot adequately represent North Dakota's interests in this litigation

because North Dakota is a separate sovereign with unique interests in its own lands, natural

resources, regulatory programs, and tax and revenue programs."  N.D. Reply at 3.  In a similar

vein, the Association believes that its interests cannot be adequately protected by Wyoming

because it has a private, financial interest that could be incompatible with the State's public

interests.  See Wyo. Mining Ass'n Reply at 5-6.

The applicants' burden to demonstrate inadequate representation by intervenors already

granted intervention is de minimis.  Wildearth Guardians, 272 F.R.D. at 13.  Additional

---

[9]  The Court's analysis of the second and third factors for intervention as of right necessarily leads the Court to conclude that the applicants have established that they have standing, i.e., the applicants have identified an imminent injury—the suspension of the federal coal management program—which is traceable to the agency inaction complained of by the plaintiffs, and the injury is judicially redressable.  See, e.g., Wildearth Guardians, 272 F.R.D. at 13 n.5 ("In most instances, the standing inquiry will fold into the underlying inquiry under Rule 24(a): generally speaking, when a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and vice versa." (citing Roeder v. Islamic Republic of Iran, 333 F.3d 228, 233 (D.C. Cir. 2003); Fund for Animals, 322 F.3d at 735.)).

applicants need only "show[] that there is a possibility that [their] interests may not be adequately represented absent intervention."  Id. (citing Fund for Animals, 322 F.3d at 735).

The plaintiffs cite no case authority in support of their sweeping proposition regarding the adequacy of representation prong of the intervention analysis.  The Court agrees with North Dakota that its "unique interests in its own lands, natural resources, regulatory programs, and tax and revenue programs" are "particularized interests that another sovereign state cannot adequately represent."  N.D. Reply at 3.  The case authority supports the position that where a state's "rights to tax and to enforce land use, natural resource management, environmental, and public safety regulations," may be threatened by the implementation or removal of a federal program, Akiachak Native Cmty. v. U.S. Dep't of Interior, 584 F. Supp. 2d 1, 6 (D.D.C. 2008), the state's interests cannot be adequately represented by any party but itself, cf. Earthworks v. U.S. Dep't of Interior, No. 09-cv-1972(HHK), 2010 WL 3063143, at *2 (D.D.C. Aug. 3, 2010) (where plaintiffs challenged federal mining rules and outcome of the case could affect the natural resources and economics of the state, the state may intervene because other admitted intervenor-defendants "[had] no duty with respect to [the state's] natural resources, environment, or residents" (internal quotation marks omitted)).  And it is not unusual for multiple states to intervene where a challenge to federal government action, or inaction as the case may be, implicates the interests of those states.  See, e.g., Envtl. Def. Fund, Inc. v. Higginson, 631 F.2d 738, 739 (D.C. Cir. 1979) ("The underlying action in this case is a suit . . . to compel certain federal officials . . . to prepare a comprehensive environmental impact statement analyzing impacts of and alternatives to federal water resource projects and operations in the Colorado River Basin.  Four states, including Colorado and Nevada, and several local entities in the Basin moved to intervene as defendants.  The District Court granted intervention to the four states . . .

." (footnote omitted)); Humane Society of the United States v. Jewell, _ F. Supp. 3d _, _, 2014 WL 7237702, at *1, 22 (D.D.C. 2014) (Wisconsin and Michigan granted intervention in dispute involving final agency rule that removed gray wolves in nine states in the midwest United States from the Endangered Species Act's list of protected species).

The Association's attempt to intervene as of right presents a closer call for the Court's consideration, as the Association admits that both it and Wyoming "share the common concern of ensuring continued federal coal leasing and operations within [Wyoming]." Wyo. Mining Ass'n Reply at 6. Nevertheless, the Association has met its de minimis burden to show that Wyoming may not adequately represent its interests. Wildearth Guardians, 272 F.R.D. at 13. While Wyoming's interests lie in preserving "the revenues federal coal leasing generates . . . and the investments Wyoming has made in coal mining regulation," Wyo. Mem. at 11, the interests of the Association are much narrower and more targeted—"protect[ing] the investments and operations of its . . . [m]embers." Wyo. Mining Ass'n Mem. at 9; see also Wyo. Mining Ass'n Reply at 6-7. Thus, the Association must be able to intervene as of right to protect the specific interests of its members. See Fund For Animals, 322 F.3d at 737 (explaining that intervention is of right where putative intervenor demonstrates that it has a "more narrow and parochial financial interest" (internal quotation marks omitted)); see also id. at 736 ("[W]e have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors."); Wildearth Guardians, 272 F.R.D. at 15, 20 (explaining that state and mining industry trade organization could intervene as of right because their interests "might diverge" during litigation, as the state would primarily advance its interests in "maintaining its unique role in regulating coal mining operations and environmental quality or its financial and social economic interests in the development of coal mining operations within its borders" at the

expense of the trade organization's primary interests in "the availability and regulation of coal leasing on federal lands" (internal quotation marks omitted)).  Accordingly, the applicants have demonstrated that they are entitled to intervene as of right in this case.

### B.  Permissive Intervention

Even assuming that the applicants had not demonstrated their intervention as of right, the Court would still exercise its discretion in favor of permitting them to intervene in this case.  The plaintiffs have seemingly conflated the relevant factors for intervention as of right and permissive intervention.  In opposing the applicants' motions for permissive intervention, the plaintiffs argue only that the applicants' "asserted interests are minimal and the bare claims that those interests may be harmed is unsupported and highly speculative."  Pls.' Opp'n at 5.  But to what extent the applicants have an interest in this litigation and to what degree any interest may be harmed by a resolution in favor of the plaintiffs is not tied to any factor pertinent to the permissive intervention analysis.  And absent any substantive opposition to the applicants' motions for permissive intervention, the Court will treat these motions as conceded.  See, e.g., Texas v. United States, 49 F. Supp. 3d 27, 39 (D.D.C. 2014) ("courts may deem the unaddressed arguments as conceded"); Way v. Johnson, 893 F. Supp. 2d 15, 19 (D.D.C. 2012) ("[The] [p]laintiff's [o]pposition . . . , though timely filed, sets forth no substantive arguments in response to [the] defendants' motions.  In this circumstance, the Court treats defendants' motion as conceded . . . .").

### C.  Conditions Upon Intervention

As articulated by another member of this Court, "[o]nce a district court concludes that a party has a right to intervene, the inquiry is not necessarily at an end."  Wildearth Guardians, 272 F.R.D. at 13.  "Even where intervention is a matter of right, district courts may impose

appropriate conditions or restrictions upon the intervenor[s'] participation in the action." Id. (citing Fund for Animals, 322 F.3d at 737 n.11). "The district court's discretion to impose reasonable restrictions on participation is consonant with its inherent power to manage the litigation before it, as well as a necessary instrument in accommodating the two conflicting goals of intervention: i.e., 'to achieve judicial economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex or unending.'" Id. (quoting Smuck v. Hobson, 408 F.2d 175, 179 (D.C. Cir. 1969)) (citation omitted).

In exercising its inherent power to manage its docket, the Court will impose the following conditions on North Dakota and the Association's intervention in this matter:[10]

- North Dakota and the Association shall confine their arguments, if any, to the existing claims in this action and shall not interject new claims or stray into collateral issues;

- Neither North Dakota nor the Association shall raise arguments or cite authority that have already been brought to the Court's attention by either the defendants or intervenor Wyoming in this action; and

- Memoranda of points and authorities filed by either North Dakota or the Association in support of or in opposition to any motion in this action shall not, without further leave of the Court and good cause shown, exceed fifteen (15) pages, and reply memoranda shall not exceed ten (10) pages.[11]

---

[10]  These are generally consistent with those conditions the Court previously imposed on Wyoming's intervention in this case.  See February 26, 2015 Order, ECF No. 29.

[11]  The Court will deny without prejudice North Dakota's Rule 12 motion to dismiss, see State of North Dakota's Motion to Dismiss, ECF No. 18, so that it can refile a Rule 12 motion that is consistent with all of these limitations imposed by the Court.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the State of North Dakota's Unopposed Motion to Intervene as a Defendant is **GRANTED**.  It is further

**ORDERED** that the Wyoming Mining Association's Unopposed Motion to Intervene as a Defendant is **GRANTED**.  It is further

**ORDERED** that the State of North Dakota and the Wyoming Mining Association shall file Rule 12 motions to dismiss, if any, on or before July 24, 2015, and are not to exceed fifteen (15) pages.[12]  It is further

**ORDERED** that the plaintiffs shall file a consolidated opposition, of no more than twenty (20) pages, to all motions to dismiss that it has yet to oppose, on or before August 3, 2015.  It is further

**ORDERED** that replies, if any, to the plaintiffs' consolidated opposition shall be filed on or before August 10, 2015, and are not to exceed ten (10) pages.  It is further

**ORDERED** that the State of Wyoming's Motion to Dismiss and the Federal Defendant[s'] Motion to Dismiss are **STAYED** until all intervenors' motions, if any, are fully briefed.

**SO ORDERED** this 15th day of July, 2015.

REGGIE B. WALTON
United States District Judge

---

[12]  Should the Association choose to file a motion, it shall review the Federal Defendant[s'] Motion to Dismiss, ECF No. 9, the State of North Dakota's Motion to Dismiss, ECF No. 18, and the State of Wyoming's Motion to Dismiss, ECF No. 30, to ensure that its motion would not be cumulative to these motions to dismiss.  If the Association chooses to file a motion that is largely redundant to these other motions, the Court may strike the motion in its entirety.