**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
WESTERN ORGANIZATION OF RESOURCE )
COUNCILS and FRIENDS OF THE EARTH, )
)
        Plaintiffs, )
)
        v. )
)     Civil Action No. 14-1993 (RBW)
SALLY JEWELL, in her capacity as Secretary of )
the Interior, DEPARTMENT OF THE )
INTERIOR, NEIL KORNZE, in his capacity as )
Director, Bureau of Land Management, and )
BUREAU OF LAND MANAGEMENT, )
)
        Defendants. )
_____)

**MEMORANDUM OPINION**

The plaintiffs, Western Organization of Resource Councils and Friends of the Earth, filed

this civil action against the defendants—the Department of the Interior ("Interior"), Sally Jewell

in her capacity as Secretary of the Interior, the Bureau of Land Management ("Bureau"), and

Neil Kornze in his official capacity as Director of the Bureau (collectively, the "federal

defendants")—"for declaratory and injunctive relief," concerning the federal defendants' alleged

"failure . . . to supplement its [1979] environmental impact analysis of the federal coal

management program . . . [and] assess the effect of the [p]rogram on the global climate, as

required by the National Environmental Policy Act[,] [42 U.S.C. § 4321 (2012)] and the

Administrative Procedure Act[,] [5 U.S.C. §§ 702, 706 (2012)]."  Complaint ("Compl.") ¶ 1; see

also id. ¶¶ 13-16.  After the institution of this action, the Court permitted the State of Wyoming,

the State of North Dakota, and the Wyoming Mining Association to intervene ("intervenor-

defendants").  See July 15, 2015 Order ("Order") at 7-13, ECF No. 37; February 18, 2015

Minute Order.  Currently pending before the Court are the Federal Defendant[s'] Corrected

Motion to Dismiss ("Defs.' Mot."), the State of Wyoming's Motion to Dismiss ("Wyo. Mot."),

the State of North Dakota's Motion to Dismiss ("N.D. Mot."), and the Wyoming Mining

Association's Motion to Dismiss ("Wyo. Mining Ass'n Mot.").  Upon careful consideration of

the parties' submissions,[1] the Court concludes for the reasons below that it will grant the federal

defendants' motion to dismiss and therefore, deny the other motions to dismiss as moot.

## I.    BACKGROUND

### A.  National Environmental Policy Act

Congress enacted the National Environmental Policy Act ("NEPA") for the purpose of

"promot[ing] efforts which will prevent or eliminate damage to the environment and biosphere . .

. ." 42 U.S.C. § 4321; see also id. § 4371.  The NEPA provides that a federal agency shall

> include in every recommendation or report on . . . major [f]ederal actions
> significantly affecting the quality of the human environment, a detailed statement
> by the responsible official on (i) the environmental impact of the proposed action,
> (ii) any adverse environmental effects which cannot be avoided should the
> proposal be implemented, [and] (iii) alternatives to the proposed action . . . .

Id. § 4332(2)(C).  This is commonly referred to as an Environmental Impact Statement ("EIS").

Oceana v. Bureau of Ocean Energy Mgmt., 37 F. Supp. 3d 147, 151 (D.D.C. 2014).  The

pertinent regulations implemented pursuant to the NEPA require the agency to prepare a

---

[1]  In addition to the filings already referenced, the Court considered the following submissions in rendering its
decision: (1) the [Federal Defendants'] Memorandum of Law [in Support of Their Motion to Dismiss] ("Defs.'
Mem."); (2) the Plaintiffs' Response in Opposition to [the] Federal Defendants' Motion to Dismiss ("Pls.' Opp'n");
(3) the Federal Defendant[s'] Reply in Support of Their Corrected Motion to Dismiss ("Defs.' Reply"); (4) the State
of Wyoming's Memorandum in Support of Motion to Dismiss ("Wyo. Mem."); (5) the State of North Dakota's
Memorandum in Support of its Motion to Dismiss ("N.D. Mem"); (6) the Wyoming Mining Association's
Memorandum of Law in Support of its Motion to Dismiss ("Wyo. Mining Ass'n Mem."); (7) the Plaintiffs'
Consolidated Response in Opposition to [the] State of North Dakota's Motion to Dismiss and Wyoming Mining
Association's Motion to Dismiss ("Pls.' Consolidated Opp'n"); (8) the Plaintiffs' Response in Opposition to [the]
State of Wyoming's Motion to Dismiss ("Pls.' Wyo. Opp'n"); and (9) the State of Wyoming's Reply Memorandum
in Support of Motion to Dismiss ("Wyo. Reply").

programmatic EIS in certain circumstances.  See 40 C.F.R. § 1508.25 (2012).  And a supplement

to the programmatic EIS is necessary when either "the agency makes substantial changes in the

proposed action that are relevant to environmental concerns" or "there are significant new

circumstances or information relevant to environmental concerns and bearing on the proposed

action or its impacts."  Id. § 1502.9(c)(1)(i)-(ii).

### B.  The Federal Coal Management Program

The following allegations are derived from the plaintiffs' complaint.  The Bureau, an

agency within Interior, implemented the federal coal management program (the "program") in

1979.  Compl. ¶¶ 3, 48, 66, 190.  Through the program, the Bureau has issued, and continues to

issue, leases to private parties that "grant[] [them] the right to mine coal from federal lands."  Id.

¶ 4; see also id. ¶¶ 47-50 (describing how leases are obtained); id. ¶¶ 67-68.

Before the Bureau implemented the program in 1979, it prepared a programmatic EIS for

the program.  Id. ¶ 13; see also id. ¶¶ 57-65 (describing certain details of the 1979 analysis).  The

1979 programmatic EIS has "never [been] supplemented . . . with an evaluation of the . . .

program's effect on climate change."  Id. ¶ 16.  More specifically, the 1979 programmatic EIS

has never been updated "to assess the effect[s] on climate change of greenhouse gas emissions

resulting from the . . . program, or to consider policies that could reduce [those] effects."  Id. ¶ 9;

see also id. ¶ 189.

### C.  The Plaintiffs

The plaintiffs are non-profit entities, whose "members live, work, recreate, and conduct

other activities in areas adjacent to tracts where coal mining occurs pursuant to leases issued

under the . . . program," id. ¶ 25, as well as in "areas affected by emissions from electric power

plants that burn coal mined under [these] leases," id. ¶ 26.  They allege that their "members are

affected by poor air quality associated with mining . . . ."  Id. ¶ 25.  According to the plaintiffs,

their members "have . . . substantial interest[s] in [ensuring] they breathe air that will not injure

their health," id., as well as using and enjoying these areas for various public purposes, which

they cannot do because of the alleged harm from the "combustion of coal," id. ¶¶ 25-26.  In light

of these purported injuries, resulting from the federal defendants' failure to supplement its 1979

environmental analysis, which the plaintiffs claim is in violation of the Administrative Procedure

Act ("APA"), 5 U.S.C. § 706(1), (2)(A) (2012), Compl. ¶¶ 192, 195-97, the plaintiffs filed suit

against the federal defendants, seeking, inter alia, to compel them to supplement the 1979

analysis, id. ¶¶ 1, 19.

## II.    LEGAL STANDARDS

### A.  Motion To Dismiss

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  So to survive a motion to dismiss for

"failure to state a claim upon which relief may be granted," Fed. R. Civ. P. 12(b)(6), the

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  The "claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556); see also Kowal v.

MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (plaintiff is entitled to "the benefit

of all inferences that can be derived from the facts alleged").  Although the Court must accept the

facts pleaded as true, legal allegations devoid of factual support are not entitled to this

assumption.  See, e.g., Kowal, 16 F.3d at 1276.  Along with the allegations made within the four

corners of the complaint, the court can consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## B.  Administrative Procedure Act

The Administrative Procedure Act ("APA") "establishes a cause of action for those 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action.'" Koretoff v. Vilsack, 614 F.3d 532, 536 (D.C. Cir. 2010) (quoting 5 U.S.C. § 702).  The APA directs the court to "compel agency action unlawfully withheld."  5 U.S.C. § 706(1).  A claim under the "unlawfully withheld" provision of 5 U.S.C. § 706(1) can proceed only if it contends that the "agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004).  The APA also directs courts to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  In making this inquiry under 5 U.S.C. § 706(2), a reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Marsh v. Or. Nat. Res. Council, 490 U.S. 360, 378 (1989) (internal quotation marks omitted).

## III.    ANALYSIS

The plaintiffs argue that the federal defendants have neglected their obligation to supplement the 1979 EIS for the federal coal management program[2] under the NEPA and its

---

[2]  There is some dispute amongst the various parties concerning the scope of the federal coal management program for which an EIS was prepared. E.g., Wyo. Mining Ass'n Mem. at 4-5 (disagreement as to whether 1979 EIS evaluated regional leasing process or included both the regional licensing process and leasing through the application process).  Another member of this Court has already found that the program assessed by the 1979 EIS includes both "the competitive regional application process . . . [and] the leasing-for-application process." Wildearth Guardians v. Salazar, 783 F. Supp. 2d 61, 73 (D.D.C. 2011).  Those parties that would have the Court

(continued . . .)

implementing regulations.[3]  See Compl. ¶¶ 9, 13-16, 189-96.  According to the plaintiff, the

federal defendants' obligation to supplement exists because the program is "an ongoing major

federal action," as the federal defendants have "continue[d]," and will continue, "to issue new

leases under the program," Pls.' Consolidated Opp'n at 3; see also Pls.' Opp'n at 14-15, and such

conduct has, and will have, a significant impact on the environment—specifically, climate

change, see Compl. ¶¶ 9, 13-16, 189-96.  No existing authority, however, permits the Court to

impose the purported obligation on the federal defendants.

The pertinent regulation requires the federal defendants to supplement an EIS only where

the agency plans on making "substantial changes [to] the proposed action that are relevant to

environmental concerns" or where "there are significant new circumstances or information

relevant to environmental concerns and bearing on the proposed action or its impacts."  40

C.F.R. § 1502.9(c)(1)(i)-(ii) (emphasis added).  There is no underlying "proposed action" in this

case to trigger an obligation to supplement the 1979 EIS because the federal coal management

program has been implemented.  See Compl. ¶¶ 47-50, 66, 68, 80, 190.  Leasing decisions are

made pursuant to a pre-approved and EIS-supported program.  And there is no allegation that the

federal defendants have issued, and continue to issue, leases in a manner other than what was

contemplated under the program implemented in 1979 or that they have proposed to amend the

leasing program since 1979.[4]  See id. ¶¶ 47-50, 66, 68, 80, 190; cf. Greater Yellowstone Coal. v.

---

(. . . continued)
narrowly characterize the program, i.e., the program assessed did not include leasing through the application
process, provide no basis for the Court to deviate from the finding in Wildearth Guardians.

[3]  The federal defendants question whether the plaintiffs' have asserted a claim under 5 U.S.C. § 706(1) or 5 U.S.C.
§ 706(2).  See, e.g., Defs.' Mem. at 1, 7.  The Court need not decide that issue, as the plaintiffs have relied on only
one argument to support their APA claim(s).

[4]  There are allegations in the complaint concerning amendments to the program and proposals to amend the
program after 1979.  See Compl. ¶¶ 66-77.  Based on a reasonable reading of the plaintiffs' complaint—as well as
their submissions—it does not appear that any post-1979 actions affected the leasing-by-application process by
(continued . . .)

Tidwell, 572 F.3d 1115, 1122-23 (10th Cir. 2009) ("While the [government] could potentially

amend the [federal action at issue] in such a manner as to constitute a major federal action, there

is no allegation this has occurred." (emphasis added)); id. at 1125 n.4.

The Court's conclusion is in accord with precedent.  In Norton, the respondents filed suit

against the petitioners in district court, alleging that the petitioners "fail[ed] to act to protect

public lands in Utah from damage caused by [off-road vehicle] use."  542 U.S at 60.  The

petitioners protected these public lands in Utah through, inter alia, a programmatic "land use

plan," which was "adopted after notice and comment" and indicated how particular land can be

used.  Id. at 59-60.  One claim advanced by the respondents in Norton was that the petitioners

were required to "undertake supplemental environmental analyses for areas [in Utah,] in which

[off-road vehicle] use had increased."  Id. at 61.  In overruling the Tenth Circuit's reversal of the

district court's dismissal of this claim, the Supreme Court relied on the principle that

"supplementation is necessary only if 'there remains "major [f]ederal action" to occur,'" id. at 73

(one alteration omitted) (emphasis added) (quoting Marsh, 490 U.S. at 374).  The Supreme Court

found that although the "approval of a land use plan" was a "major [f]ederal action" subject to an

EIS, "that [federal] action is completed when the [land use] plan is approved."  Id. (alteration

omitted) (emphasis in original).  And "[t]he land use plan was the 'proposed action'

contemplated by [40 C.F.R. § 1502.9(c)]."  Norton, 542 U.S. at 73.  Therefore, even after noting

that the petitioners "may issue management decisions to implement [the] land use plan[]," id. at

69 (internal quotation marks omitted), the Supreme Court nonetheless concluded there could be

"no ongoing 'major [f]ederal action' that could require supplementation . . . ."  Id.; see also

---

(. . . continued)
which the federal defendants issue the leases complained of by the plaintiffs.  See, e.g., id. ¶ 80 ("[the Bureau] has
continued to issue coal leases under the federal coal management program as contemplated under the 1979
[programmatic EIS]").

Hammond v. Norton, 370 F. Supp. 2d 226, 255 (D.D.C. 2005) ("[I]f the actions remaining . . . are 'purely ministerial,' . . . then . . . no [supplemental EIS] must be prepared.").

Likewise, the possibility of major federal action remaining here was foreclosed after the federal coal management program was implemented in 1979 and that same program continues to govern the leases today.  Compl. ¶¶ 47-50, 66, 68, 80, 190.  Once the federal coal management program went into effect, the proposed federal action came to an end.  That the federal defendants continue to issue leases in a manner consistent with the federal coal management program introduced in 1979, does not constitute an "ongoing 'major [f]ederal action,'" Norton, 542 U.S. at 73, necessitating a supplemental EIS, cf. Ctr. for Biological Diversity v. Salazar, 706 F.3d 1085, 1095 (9th Cir. 2013) ("additional, independent actions . . . did not trigger [statutory] supplementation of the . . . environmental analysis" where those actions did not "affect[] the validity or completeness" of the plan for which the environmental analysis was conducted); Greater Yellowstone, 572 F.3d at 1124 (recognizing that there is no remaining major federal action "merely because an agency retains a degree of discretion in a project"); Yount v. Salazar, No. 11-C-8171-PCT-DGC, 2013 WL 2370619, at *1, *2 (D. Ariz. May 29, 2013) (where the Secretary of Interior decided "to withdraw from mineral development over one million acres of public lands in the Grand Canyon Watershed in Northern Arizona," and where assuming that the Secretary of Interior may have had to evaluate claims from "mining claimants in the withdrawal area[,] seek[ing] mineral exams to demonstrate that their claims constitute preexisting rights exempt from the withdrawal," there was no remaining federal action because the exams "were not required to effectuate the withdrawal" and had "no bearing on the withdrawal decision itself"); Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp., 524 F. Supp. 2d 642, 710 (D. Md. 2007) (no major federal action remained where defendants had

already made "critical decision" to move forward with highway construction project, despite the fact that "approval of [certain] . . . design-build contracts" was "still pending"); Envtl. Prot. Info. Ctr. v. U.S. Fish & Wildlife Serv., No. 04-CV-4647-CRB, 2005 WL 3021939, at *5, *6 (N.D. Cal. Nov. 10, 2005) (no major federal action remaining where government had "adaptive management" role i.e., "ongoing monitoring" responsibilities pursuant to a conservation plan).

Finally, the Court finds the plaintiffs' reliance on Marsh, 490 U.S. at 371-72, Friends of the Clearwater v. Dombeck, 222 F.3d 552 (9th Cir. 2000), and Nat'l Wildlife Fed'n v. Appalachian Reg'l Comm'n, 677 F.2d 883 (D.C. Cir. 1981), unavailing.  Pls.' Opp'n at 5-9. None of these cases present analogous facts where, as here, the government has implemented an EIS-supported program that requires some degree of management after its implementation.  In other words, these cases fail to advise the Court as to when a programmatic EIS must be supplemented.  Rather, Marsh, 490 U.S. at 363, 367, 371-72, and Friends of the Clearwater, 222 F.3d at 554-55, 558, concerned supplementation of an EIS for specific projects.  And National Wildlife only touched upon the issue of when a programmatic EIS must be prepared.  See 677 F.2d at 891-92.  Indeed, National Wildlife appears to support the Court's rationale for finding that there is no ongoing major federal action in this case.  See id. at 891 (where there is a government "plan," continuing major federal action can exist only if "considerable implementation remained").[5]  In short, the plaintiffs have not directed the Court to any authority that requires the federal defendants to supplement the 1979 programmatic EIS for the federal coal management program.

---

[5]  Despite the absence of a programmatic EIS, the District of Columbia Circuit in National Wildlife concluded that the government complied with its obligations under the NEPA because it conducted "site specific EISs" for individual projects, pursuant to a larger highway development project.  See 677 F.2d at 891.  According to the plaintiffs' allegations, the federal defendants have conducted such site-specific analyses.  See Compl. ¶ 18.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the federal defendants' motion to dismiss on the ground that they have no duty to supplement the 1979 programmatic EIS for the federal coal management program because there is no remaining or ongoing major federal action that confers upon them a duty to do so.

**SO ORDERED** this 27th day of August, 2015.[6]

REGGIE B. WALTON
United States District Judge

---

[6] The Court has contemporaneously issued an Order consistent with this Memorandum Opinion.